# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

PHILIP CALDERON, FARSHAD PINCHASI, ALLISON FIELDS, and DANA FOLGAR, *on their own behalf and on behalf of all others similarly situated,*

Civ. Action No.:
1:25-cv-02320 (FB)(LKE)

*Plaintiffs,*

- against -

PUBLIC PARTNERSHIPS, LLC,

*Defendant.*

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into between Plaintiffs Philip Calderon, Farshad Pinchasi, Allison Fields, and Dana Folgar (jointly, the "Plaintiffs" or "Class Representatives"), on behalf of themselves and the Proposed Settlement Class defined below, and Defendant Public Partnerships, LLC ("PPL") and its subsidiaries, affiliated entities, parent corporations, owners, officers, members, successors, and assigns. Plaintiffs and PPL together are collectively referred to as the "Parties."

## TABLE OF CONTENTS

I.      RECITALS ........................................................................................................... 2
II.     DEFINITIONS..................................................................................................... 3
III.    CLASS CERTIFICATION................................................................................... 8
IV.     MONETARY RELIEF ........................................................................................ 9
V.      NON-MONETARY RELIEF. ........................................................................... 15
VI.     RELEASES......................................................................................................... 17
VII.    DUTIES OF SETTLEMENT ADMINISTRATOR .......................................... 19
VIII.   DATA PRODUCTION....................................................................................... 23

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

| IX. | NOTICE PLAN. | 23 |
|---|---|---|
| X. | OPT-OUT AND OBJECTION PROCEDURES | 26 |
| XI. | RIGHT TO CANCEL OR MODIFY | 28 |
| XII. | PUBLICITY | 29 |
| XIII. | NO ADMISSION OF LIABILITY | 30 |
| XIV. | TIMING OF BRIEFING, FINAL FAIRNESS HEARING, AND PAYMENTS | 30 |
| XV. | DISPUTE RESOLUTION. | 34 |
| XVI. | MISCELLANEOUS | 35 |

## I. RECITALS

WHEREAS, Plaintiffs, represented by Katz Banks Kumin LLP and The Legal Aid Society are the Named Plaintiffs and Proposed Class Representatives in the lawsuit *Calderon et al v. Public Partnerships LLC*, No. 25-cv-02320 ("the Case") in the U.S. District Court for the Eastern District of New York ("the Court"); and

WHEREAS, in their First Amended Complaint, Plaintiffs asserted claims under the federal Fair Labor Standards Act, the New York Labor Law, the New York Wage Parity Act, New York Labor Law § 195, the New York State Paid Sick and Safe Leave Law and for breach of contract; and

WHEREAS, PPL categorically and unequivocally denies all allegations of wrongdoing in the Case; and

WHEREAS, PPL is agreeing to resolve this matter solely to avoid the burden, uncertainty, delay, expense and distraction of litigation; and

WHEREAS, the Parties agreed to stay the litigation and engage in mediation to seek to resolve the claims in the Case on a class-wide basis; and

WHEREAS, the Parties held a mediation on December 15, 2025, with mediator Stephen Sonnenberg; and

WHEREAS, the Parties held subsequent mediations on January 20, 2026, and February 11, 2026, with mediator Marc Isserles, and engaged in further settlement conversations facilitated by Mr. Isserles; and

WHEREAS, PPL produced several rounds of payroll and health plan related data prior to the mediation, and made representations concerning the state of the health plan premiums collected and paid time off accrued by members of the Settlement Class; and

WHEREAS, on April 13, 2026, the Parties informed the Court that they had reached an agreement-in-principle to settle the Case; and

WHEREAS on May 1, 2026, through counsel, Plaintiffs and PPL signed a term sheet, the contents of which speak for themselves; and

WHEREAS, Plaintiffs believe that this Agreement confers substantial benefits on the Settlement Class and that it is fair, reasonable, adequate, and in the best interest of themselves and the Settlement Class Members; and

WHEREAS, Class Counsel has independently determined that the terms of this Agreement are fair, reasonable, adequate, and in the best interests of the Settlement Class Members;

NOW THEREFORE, in consideration of the foregoing and of the promises and mutual covenants contained herein, and other good and valuable consideration, it is hereby agreed, by and among the undersigned Parties, as follows.

## II.    DEFINITIONS

1.    "Additional MEC Fund" means the payment detailed in Paragraph 65 below:

2.    "Agreement" means this Settlement Agreement.

3. "Case" means the lawsuit *Calderon et al v. Public Partnerships LLC*, No. 25-cv-02320, filed by Plaintiffs and pending in the U.S. District Court for the Eastern District of New York.

4. "CDPAP" means New York's Consumer Directed Personal Assistant Program.

5. "Class Counsel" means Katz Banks Kumin LLP and The Legal Aid Society.

6. "Class Period" means March 1, 2025 through April 30, 2026.

7. "Class Representatives" — see "Plaintiffs."

8. "Common Fund" means the overall fund to be created and established as a Qualified Settlement Fund by the Settlement Administrator, as detailed in Paragraph 86 below.

9. "Court" means the U.S. District Court for the Eastern District of New York, including the judges to whom the Case is assigned.

10. "DWT" means Davis Wright Tremaine LLP (counsel for PPL).

11. "Email Notice" means the notice to be sent by email detailed in Paragraph 104 below.

12. "ESSTA" means the New York City Earned Safe and Sick Time Act, N.Y.C. Admin. Code tit. 20, ch. 8.

13. "Final Approval" means the Court's entry of an order finally approving the settlement.

14. "Final Approval Order" means the order effectuating Final Approval.

15. "Flex Plan" means the PPL Flexible Benefit Plan established and maintained by PPL.

16. "FLSA" means the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq.

17. "General Damages Payment" means the $40,500,000 payment detailed in Paragraph 63.a) below.

18. "Guaranteed MEC Payment" means the $25,000,000 payment detailed in Paragraph 63.b). below.

19. "Health Plan Account" means PPL's NY Wage Parity Health Funder Account (account number ending 4775).

20. "Initial Monetary Payment Due Date" means the date thirty (30) days after the Settlement Effective Date by which PPL must pay the Total Initial Monetary Payment into the Common Fund, as detailed in Paragraph 62 below.

21. "Initial Notice Date" means the date on which Email Notice and Text Notice are sent by the Settlement Administrator, as described in Paragraphs 104 & 105 below.

22. "KBK" means Katz Banks Kumin LLP (counsel for Plaintiffs).

23. "LAS" means The Legal Aid Society (counsel for Plaintiffs).

24. "Long Form Notice" means the detailed notice described in Paragraph 104 below and attached as Exhibit 3.

25. "MEC" means the Minimum Essential Coverage, Preventive Plan established and maintained by PPL.

26. "MEC Allocation" the money allocated by PPL for MEC benefits less administrative costs and termination fees contained within the Health Plan Account, plus unspent advance claims funds that are returned to the Health Plan Account or to any other PPL account.

27. "Named Plaintiffs" — see "Plaintiffs."

28. "Net Guaranteed Recovery" means the Total Guaranteed Recovery minus Class Counsel's Court-approved costs, attorneys' fees, the costs of the Settlement Administrator, and service awards, as each of those are described in Paragraphs 67-69, below.

29. "Notice Period" means the sixty (60)-day period following the Initial Notice Date in which members of the Settlement Class will be able to opt out of the Settlement Class or object

to the Settlement (except that opt-outs cannot also file objections), as described in Paragraph 111 below.

30.     "NYLL" means the New York Labor Law, Ch. 31 of the Consolidated Laws of New York.

31.     "NYLL Section 195" or "WTPA" means NYLL § 195.

32.     The "Objection/Opt-Out Deadline" means the date sixty (60) days after the Initial Notice Date, and shall be the deadline by which all requests for exclusion (or "opt-outs") and objections must be received by the Settlement Administrator *or* postmarked on or before, except that opt-outs cannot also file objections.

33.      "Parties" means Plaintiffs and PPL.

34.     "Plaintiffs" or "Named Plaintiffs" or "Class Representatives" means Philip Calderon, Farshad Pinchasi, Allison Fields, and Dana Folgar.

35.     "PPL" means Public Partnerships, LLC and its subsidiaries, affiliated entities, parent corporations, owners, officers, members, purchasers, successors, lessees, trustees, and assigns.

36.     "PPL Releasees" means PPL and its parents, holding companies, successors, assigns, owners, investors/shareholders (including, without limitation, their respective members, partners (limited and general), managers, shareholders, subsidiaries, directors, officers, principals, employees, investors and affiliated entities, holding companies and persons), subsidiaries, affiliates, officers, employees, and attorneys.

37.     "Preliminary Approval" means the Court's entry of an order preliminarily approving the settlement and preliminarily certifying a settlement class.

38.     "Preliminary Approval Order" means an order substantially similar to Exhibit 10.

39.     "PSSLL" means the New York State Paid Sick and Safe Leave Law, NYLL § 196-b.

40. "PTO" means paid time off, inclusive of paid sick and safe leave under the PSSLL and the ESSTA.

41. "PTO Account" means PPL's NY Wage Parity PTO Account (account number ending 2517).

42. "PTO Payment" means the $92,000,000 payment detailed in Part IV below.

43. "PTO Reconciliation" means the contemplated reduction in the Settlement Class's PTO balances commensurate with the PTO Payment, as detailed in Part IV below.

44. "Released Class Claims" means the claims detailed in Paragraph 84 below.

45. "Reserve Fund" means the payment detailed in Paragraph 64 below.

46. "Settlement Administrator" means Atticus Administration, LLC, who was chosen by Plaintiffs following a competitive bidding process and approved by PPL.

47. "Settlement Class" means the class of persons to be certified for settlement purposes only under Fed. R. Civ. P. 23 as detailed in Part III below.

48. "Settlement Effective Date" means the latest of the: (A) thirty (30) days after the Final Approval Order, provided no appeal is timely filed and the Final Approval Order has been duly filed with the Clerk of the Court; or (B) the date of the final adjudication of any appeals of the Final Approval Order or the expiration of any relevant period to appeal the Final Approval Order.

49. "Settlement Execution Date" means the date all Parties execute this Agreement.

50. "SSL Account" means any new account opened by PPL to house funds related to sick and safe leave for downstate personal assistants under the PSSLL and the ESSTA, including the account ending in account number 8358.

51. "Stout" means Stout Risius Ross, LLC, the mutually agreed-upon independent accounting/advisory firm selected by Plaintiffs, pursuant to the Term Sheet, to conduct the forensic accountings detailed in Section V below.

52. "Term Sheet" means the term sheet agreed to by the Parties on May 1, 2026.

53. "Term Sheet Execution Date" means May 1, 2026.

54. "Text Notice" means the notice to be sent by text message detailed in Part IX below.

55. "Total Guaranteed Recovery" means $162,000,000, unless the PTO Payment is reduced for the reasons set forth in Part IV below.

56. "Total Initial Monetary Payment" means the $157,500,000 total payment, inclusive of the fees, costs and any service awards, but not inclusive of employer-share taxes, as detailed in Part IV below, unless the PTO Payment is reduced for the reasons set forth in Paragraph 63.d).

57. "Wage Parity Act" or "WPA" means the New York Home Care Worker Wage Parity Act, N.Y. Pub. Health L. § 3614-c.

## III. CLASS CERTIFICATION

58. The Parties agree that the following class of persons (the "Settlement Class") shall be certified as a class action under Federal Rule of Civil Procedure 23(b)(3):

> All current and former personal assistants who were paid through PPL as the statewide fiscal intermediary for services performed as part of CDPAP in New York City, Nassau County, Suffolk County, and/or Westchester County (collectively, "downstate personal assistants") at any time between March 1, 2025 and April 30, 2026.

59. The Parties stipulate to certification of the Settlement Class for purposes of settlement only. If the Court does not grant either preliminary or final approval of any settlement, including after a second attempt pursuant to Paragraph 136 below, and the Parties are unable to reach

another agreement, the Parties will not stipulate to certification of the Settlement Class, PPL reserves its right to contest class certification, and this Agreement shall be null and void and the Parties shall stipulate to decertify the Settlement Class.

## IV.    MONETARY RELIEF

60.    The Parties agree to the following monetary relief, subject to Court approval.

61.    **Total Initial Monetary Payment.** As set forth in Paragraphs 61 to 63 below, PPL shall pay $157,500,000 to cover a global settlement for the entire Settlement Class (the "Total Initial Monetary Payment"). This is an all-in payment inclusive of the fees, costs, and any service awards, but not inclusive of employer-share taxes. Employer-share taxes, as determined by the Settlement Administrator (and subject to review and confirmation by PPL), shall be paid by PPL, in consultation with the Administrator, as described below in Paragraph 93.

62.    **Timing of Total Initial Monetary Payment.** PPL shall pay the Total Initial Monetary Payment in cash into the Common Fund within thirty (30) days of the Settlement Effective Date (the "Initial Monetary Payment Due Date").

63.    **Allocations**. The Total Initial Monetary Payment shall be allocated as follows:

   a.    **General Damages Payment.** $40,500,000, representing settlement of claims under the FLSA, NYLL, WPA, WTPA, ESSTA, PSSLL, breach of contract and any other claims asserted in the Case, with 12% representing alleged wage damages (to be reported on a W-2) and 88% representing alleged non-wage damages (to be reported on a 1099-MISC if legally required).

   b.    **Guaranteed MEC Payment.** $25,000,000, representing settlement of all claims related to the MEC and Flex Plan under the WPA, WTPA, NYLL, and ERISA

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

claims related to any aspect of the MEC or the MEC-related payments set forth in this Section, with 50% to be reported on a Form W-2, and 50% to be reported on a Form 1099-MISC, if legally required. For purposes of clarity, the Guaranteed MEC Payment shall be paid by PPL solely from the MEC Allocation; provided, however, that if there is less than $25,000,000 in MEC Allocation in the Health Plan Account at the Initial Monetary Payment Due Date, PPL shall pay the difference to the Common Fund from other available funds such that $25,000,000 in total is paid pursuant to this subsection.

c. **PTO Payment.** $92,000,000 (except as may be reduced pursuant to Paragraph 63.d), representing settlement of all claims related to PTO and any other claims for paid time off under the WPA, WTPA, NYLL, ESSTA and PSSLL, with 50% to be reported on a Form W-2, and 50% to be reported on a Form 1099-MISC, if legally required. For purposes of clarity, the PTO Payment shall be paid by PPL solely from PPL's NY Wage Parity PTO Account (account number ending 2517) ("PTO Account") or any new account opened by PPL to house funds accrued/collected related to sick and safe leave ("SSL Account"). PPL also represents and agrees that the funds in the PTO Account and SSL Account shall not be used for any other purpose than the payment of PTO/SSL to the Settlement Class between the Term Sheet Execution Date and the Settlement Effective Date, and agree that this is a material term of the Settlement.

d. **PTO Reconciliation.** Promptly upon the Settlement Effective Date, PPL shall reduce the overall PTO balance in PPL's internal PTO accounting to reflect the PTO Payment. Payments and PTO balance decreases shall be made in the manner

set forth in the Allocation & PTO Reconciliation Plan (Exhibit 1). Prior to the submission of final approval papers, if it is determined pursuant to the pre-Final Approval accounting to be conducted under Paragraph 79 that less than $92,000,000 of the available PTO balance is available to be paid out to the Settlement Class, PPL will pay 90% of the available PTO balance, with a commensurate PTO Reconciliation in each individual member of the Settlement Class's accrued PTO balance.

64.     **Reserve Fund.** Within thirty (30) days of the Settlement Effective Date, PPL shall make a deposit of $4,500,000 as a "Reserve Fund" in settlement of claims under the FLSA, NYLL, WPA, WTPA, ESSTA, PSSLL, and other claims asserted in the Case, to be held in a separate escrow account by the Settlement Administrator until determination of the amounts available in the Additional MEC Fund. If no money is available for an Additional MEC Fund under Paragraph 65 below, the full Reserve Fund shall be transferred into the Common Fund for distribution within seven (7) days after the Additional MEC Fund has been calculated (as described in Paragraph 80 below). However, if money is available for the Additional MEC Fund, for every dollar of Additional MEC Fund, as described in Paragraph 65, 50 cents of the Reserve Fund shall be returned to PPL, up to a maximum of $4,500,000. Any amount of the Reserve Fund remaining after distribution to PPL (pursuant to the previous sentence) shall be transferred into the Common Fund for distribution, with 12% representing alleged wage damages (to be reported on a Form W-2) and 88% representing alleged non-wage damages (to be reported on a Form 1099-MISC if legally required).

65. **Additional MEC Fund.** In further settlement of all claims related to MEC and the Flex Plan under the WPA, WTPA and the NYLL, PPL agrees to pay any MEC Allocation remaining as of April 30, 2027, per the forensic accounting described in Paragraph 80, as cash into the Common Fund. PPL shall pay any Additional MEC Fund into the Common Fund for distribution, within twenty (20) days of the completion of the forensic accounting described in Paragraph 80 below, with 50% to be reported on a Form W-2, and 50% to be reported on a Form 1099-MISC, if legally required.

66. **Total Guaranteed Recovery.** The sum of the payments provided under Paragraphs 63 through 65 shall ensure the Settlement Class receives a "Total Guaranteed Recovery." This amount shall be equal to $162,000,000 <u>unless</u> the payment set forth in Paragraph 63.c) is reduced for the reasons set forth in Paragraph 63.d) (which the Parties believe is unlikely).

67. **Attorneys' Fees and Costs.** From the Total Guaranteed Recovery, Plaintiffs shall file a fee petition with the Court (hereafter, the "Fee Petition") for Class Counsel's reasonable costs of up to $400,000, and attorneys' fees of up to 15% of the Total Guaranteed Recovery, which PPL will not oppose, provided that Plaintiffs' briefs in support of preliminary and final approval, and the Fee Petition, will advise the Court that attorneys' fees and costs are sought from the entire Total Guaranteed Recovery. Should the Court approve less, it will neither be a basis to revoke the settlement, appeal the settlement, nor result in an increase to the Total Guaranteed Recovery.

68. **Costs of Settlement Administration.** Plaintiffs shall also in their Fee Petition seek Court approval of the costs of the Settlement Administrator. At the time of executing this Agreement, the Parties anticipate these costs will not exceed $450,000, pursuant to the proposal submitted by the Settlement Administrator and agreed to by Plaintiffs. Should the

costs of the Settlement Administrator unexpectedly end up being more than $450,000, those costs will be drawn from the Common Fund, subject to Court approval. Should the Court approve less than Plaintiffs request for payment to the Settlement Administrator, it will not be a basis for the Parties to revoke the Agreement. In the event the Settlement Effective Date does not occur, the Parties agree to split the costs equally of the Settlement Administrator incurred to that date.

69. **Class Representative Service Awards.** From the Total Initial Monetary Payment, Plaintiffs shall ask the Court for up to $15,000 per Class Representative as compensation for their representation of the Class, for a total of $60,000 in service awards, which PPL will not oppose. Should the Court approve less, it will not be a basis to revoke the settlement.

70. The Settlement Administrator shall pay all of the Court-approved costs, attorneys' fees, settlement administration costs, and service awards from the Total Initial Monetary Payment that PPL pays to the Common Fund. The remainder of the Total Guaranteed Recovery (The "Net Guaranteed Recovery") shall be distributed by the Settlement Administrator to the members of the Settlement Class who have not opted out, in the manner set forth in the Allocation Plan attached hereto as Exhibit 1.

71. The Reserve Fund and Additional MEC Fund shall be transferred into the Common Fund for distribution to the Settlement Class within seven (7) days after the Additional MEC Fund has been calculated. The Additional MEC Fund shall be calculated within 21 days of April 30, 2027. The Parties shall arrange to transfer the Additional MEC Fund into the Common Fund and any required amount of the Reserve Fund to be returned to PPL on the same day, provided that the required amount of the Reserve Fund to be returned (if any)

shall only be returned once the Settlement Administrator has confirmed that the Additional MEC Fund has been paid by PPL. The total deposit between these payments into the Common Fund, (the "Second Settlement Payment") shall be distributed by the Settlement Administrator to Class Counsel and among members of the Settlement Class in the manner set forth in the Allocation Plan attached hereto as Exhibit 1.

72.  If the Settlement Effective Date occurs more than 45 days prior to April 30, 2027, there shall be two distributions (of the Net Initial Settlement Payment and the Second Settlement Payment, respectively). If the Settlement Effective Date occurs later than 45 days prior to April 30, 2027, the Net Initial Settlement Payment and the Second Settlement Payment shall be combined for a single distribution so as to reduce the costs of administration, unless Class Counsel otherwise determine that delays in the forensic accounting of the MEC Allocation would require Class members to wait too long to receive their payments.

73.  **No Reversion.** No portion of the Total Initial Monetary Payment or the Additional MEC Fund will revert to PPL, except for any amount of the Reserve Fund to be returned to PPL under the conditions defined above in Paragraph 64 (which will be replaced by Additional MEC Fund dollars).

74.  **Method of Payment to Settlement Class.** Payments will be made to Settlement Class members who do not opt out by either: (a) direct deposit/ACH; or (b) check. The default payment method shall be direct deposit to the last banking information available to PPL if such information is on file, unless such Settlement Class members elect otherwise on the Settlement Website (which the Administrator shall adopt a secure process for that reasonably prevents fraud). If PPL has no such information, the default payment method

shall be by check. If checks are issued, those checks shall be valid for a period of ninety (90) days following their issuance by the Settlement Administrator.

## V.     NON-MONETARY RELIEF.

75.     The Parties agree to additional non-monetary relief, as follows.

76.     First, the Parties agreed that Stout would conduct the forensic accountings provided for in the Term Sheet and this Agreement. Accordingly, after the Term Sheet was signed, PPL permitted Stout to conduct a forensic accounting regarding the status of the MEC Allocation in the Health Plan Account and PTO funds in the PTO Account as of the date of the Term Sheet. The forensic accounting included, *inter alia*, accounting for the amounts contributed to and paid out from each account; the amounts of MEC claims paid; the amount of administrative expenses and other fees paid; and the amount of PTO accrued and used by the members of the Settlement Class and by each individual member of the Settlement Class; and the resulting amount of PTO remaining for the members of the Settlement Class and each individual member of the Settlement Class. PPL further agreed, pursuant to the Term Sheet, to provide all necessary and reasonably requested documents, data, and account access in reasonably usable electronic format, together with access to knowledgeable personnel, as reasonably requested by the Accounting Firm to conduct this accounting and subsequent accountings.

77.     Stout conducted the initial accounting and distributed a report, which Plaintiffs' counsel sent to DWT. PPL obtained a second forensic accounting from the firm Aprio. PPL sent Aprio's report to Plaintiffs' counsel.

78.     Based on Aprio's analysis, the Parties agree that the MEC Allocation as of the date of the Term Sheet is approximately $36,000,000. The Parties further agree that based on

documents provided by Leading Edge, approximately $1,250,000 in additional funds is currently held by Leading Edge in advance claims funds and, if unspent by April 30, 2027 on claims or fees, is due to be returned by Leading Edge to PPL. The Parties further agree that as of the date of the Term Sheet there is approximately $123,000,000 in the PTO Account.

79. PPL shall permit Stout to conduct a forensic accounting on the status of the PTO funds in the PTO Account and SSL Account only (with PPL to provide the same data as described in Paragraph 76 concerning PTO/SSL only) to be completed by thirty (30) days prior to the deadline to submit the motion for final approval. PPL reserves the right to have Aprio conduct a parallel accounting as well, to be provided to Class Counsel (if PPL intends to contest the findings of Stout) no later than fifteen (15) days prior to the deadline to submit the motion for final approval.

80. PPL shall permit Stout and Aprio to conduct another forensic accounting on the status of the MEC Allocation in the Health Plan Account and PTO funds in the PTO Account (with PPL to provide Stout and Aprio the same data as described in Paragraph 76) as of April 30, 2027. The Parties agree that Aprio shall refresh its analysis to determine the MEC Allocation in the Health Plan Account as of April 30, 2027, and that analysis shall be provided promptly to Class Counsel. Stout shall then be able to contest Aprio's findings, if needed.

81. The forensic accountings described above shall be solely for purposes of settlement and settlement-related motions, and shall not be admissible or otherwise used in the Case if the Court does not issue a Final Approval Order and the Parties return to litigation.

82. As a condition of the Term Sheet and this Agreement, PPL ended the mandatory MEC as of April 30, 2026.

## VI. RELEASES.

83. **General Release by Named Plaintiffs**. On the Settlement Effective Date and by operation of the entry of the Final Approval Order, the Named Plaintiffs shall release and forever discharge the PPL Releasees from the Released Class Claims, and any and all liabilities, attorneys' fees, costs, obligations, duties, undertakings, agreements, contracts, claims, demands, damages, proceedings, actions, and causes of action of every kind, nature, and character, which each Named Plaintiff (or his/her/their heirs, representatives, successors, assigns) had, has, may have, or will have up to and including through the Settlement Execution Date, whether known or unknown, suspected or unsuspected, including, without limitation, the claims in the Case, any claims or causes of actions of alleged tortious, wrongful, unlawful, or improper acts or conduct or any discriminatory events, acts, patterns, and/or practices as well as the continuing or future effects thereof arising under local, state or federal law.

84. **Settlement Class Releases**. All members of the Settlement Class who are sent notice (as set forth in Section IX) and who do not validly opt out of the Settlement will, upon the Settlement Effective Date and by operation of the entry of the Final Approval Order, have released and forever discharged (on behalf of himself/herself/themselves, his/her/their heirs, representatives, successors, assigns) PPL and the PPL Releasees from: (1) any and all claims against PPL and the PPL Releasees raised on behalf of the Settlement Class or that could have been raised on behalf of the Settlement Class based on the facts alleged in the First Amended Complaint, and (2) any and all wage and hour claims against the PPL

Releasees related to the personal assistant's provision of services, and payment for services, rendered as part of CDPAP through the Settlement Execution Date (collectively, the "Released Class Claims"). Without limiting the foregoing, the Released Class Claims include all federal, state, and local claims for wages, compensation, paid time off, or paid leave benefits, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs and expenses that the Settlement Class may have had as of the Settlement Execution Date, including, but not limited to, all claims under the FLSA, WPA, NYLL, WTPA, ESSTA, PSSLL and any related regulations, ordinances or Wage Orders, ERISA claims related to any aspect of the MEC or the MEC-related payments set forth in Section IV, and any other claim asserted in the First Amended Complaint, including breach of contract. For the avoidance of doubt, this release does not include claims based on conduct occurring after the Settlement Execution Date. For further avoidance of doubt, this release does not include claims against any prior CDPAP fiscal intermediary other than PPL.

85.     The Parties acknowledge and agree that their mutual intent is for PPL to obtain, and for all members of the Settlement Class who do not opt out of the settlement to release all Released Class Claims, including FLSA claims, as approved in *Lundeen v. 10 West Ferry St. Ops.* and subsequent cases. *See* 156 F.4th 332 (3rd Cir. 2025) (holding "the language of § 216(b) does not bar the release of unasserted FLSA claims in a court-approved Rule 23 settlement" but requiring that class members be explicitly informed that they would give up FLSA claims if they do not opt out for the releases to be a "fair and reasonable" settlement term).

## VII.   DUTIES OF SETTLEMENT ADMINISTRATOR

86.   **Common Fund.** The Settlement Administrator shall, upon Final Approval, establish and maintain the Common Fund into which all payments shall be made by PPL (except for the Reserve Fund, which shall be held in a separate escrow account by the Administrator until the determination of Additional MEC Fund and the amount, if any, of the Reserve Fund to be returned to PPL), and from which all payments due to the Settlement Class, Class Counsel, Settlement Administrator, and Named Plaintiffs shall be made.[1] The Common Fund shall be established and maintained by the Settlement Administrator agreed to by the Parties as a Qualified Settlement Fund for federal tax purposes pursuant to Treas. Reg. § 1.468B-1. The Settlement Administrator, on behalf of the Settlement Class, shall be responsible for all administrative, accounting and tax compliance activities in connection with the Qualified Settlement Fund, including any filing necessary to obtain Qualified Settlement Fund status pursuant to Treas. Reg. § 1.468B-1. PPL shall provide to the Settlement Administrator any documentation reasonably necessary to facilitate obtaining Qualified Settlement Fund status.

87.   **Escrow for Reserve Fund.** The Settlement Administrator shall hold the Reserve Fund in a separate interest-bearing escrow account until the Additional MEC Fund has been calculated. Any interest earned on the Reserve Fund while held in escrow may be used by the Administrator to defray the overall cost of settlement administration to the Class.

88.   **Notices.** The Settlement Administrator shall send all notices required under the Notice Plan in this Agreement set forth in Section IX below.

---

[1] In the event that the Settlement Administrator agreed to by the Parties is not approved by the Court, Plaintiffs will select the next most-competitive bidding settlement/claims administration organization to perform the services set forth in this Agreement, subject to PPL and Court approval.

89.    **CAFA Compliance.** The Settlement Administrator will transmit all notices described in 28 U.S.C. § 1715, which the Parties shall ensure the Settlement Administrator distributes within the time and in the manner and form required by law (including, i.e., sending them within ten (10) days of the filing of motion for preliminary approval), with PPL filing a declaration notifying the Court within five (5) business days of such notice issuing.

90.    **Phone Support.** The Settlement Administrator will set up a dedicated phone line with adequate staffing to respond to Class Member phone inquiries.

91.    **Status Reports.** The Settlement Administrator shall, weekly within the Notice Period, provide status reports to Class Counsel and DWT as to notice distribution, opt-outs, and objections received, if any. The Settlement Administrator shall provide all opt-out notices described in Paragraph 114 below. After the Notice Period, the Settlement Administrator shall timely notify Class Counsel and DWT of all exclusion requests and objections timely submitted and not withdrawn.

92.    **Payment Duties.** The Settlement Administrator shall disburse all funds from the Common Fund as specified in this Agreement, including as specified in the Allocation Plan attached hereto as Exhibit 1.

93.    The Settlement Administrator shall make all payments to members of the Settlement Class on the appropriate tax forms pursuant to the allocations set forth in Paragraphs 63 through 65 above. The appropriate withholding of federal, state, and local income taxes, FICA, FUTA, SUTA, Medicare, and any other employee-share payroll taxes including backup withholding or any other withholding, if required, will be made from the settlement payments to the members of the Settlement Class. The Settlement Administrator will be solely responsible for all employee-share tax withholding determinations and payments.

The Settlement Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs subject to reporting) and shall pay from the Common Fund any and all taxes as well as any other obligations with respect to the payments or distributions not otherwise addressed in this Agreement, except for any employer-share taxes, which shall be the sole responsibility of PPL. The Settlement Administrator shall calculate the employer-share taxes owed and provide these calculations to PPL for its approval, which shall not be unreasonably withheld. Further, PPL agrees to pay required employer-share taxes within 10 business days of disbursement of the Net Initial Settlement Fund and Second Settlement Fund.

94. Service award payments to Named Plaintiffs approved by the Court shall be reported on a Form 1099-MISC.

95. **Other Reporting.** The Settlement Administrator will provide such reports to the Parties upon request of any Party, or the Court, regarding the status of distribution of the notice or any other aspect of the administration process.

96. **Language Access**. The Settlement Administrator shall ensure that notices are available on the Settlement Website in multiple languages spoken by Class Members. Further, to the extent that PPL's data reflects preferred languages for a significant portion of Class Members (based on the reasonable judgment of Class Counsel), the Settlement Administrator shall also ensure that the Email Notice and Text Notice are generally provided in both English and other languages commonly spoken by Class Members; provided, however, that Class Counsel may obtain *pro bono* assistance to reduce the potential costs of translation of notices. Further, the Settlement Administrator shall ensure

that appropriate phone support in the Class Members' preferred language is accessible by providing call-back options for Class Members who call in with questions and whose preferred language is not English or Spanish.

97. **Unclaimed Payment Reminder Notice**. If any payments bounce back from direct deposits, the Settlement Administrator will undertake efforts to contact those Settlement Class Members by email and text message to obtain alternative payment information. Specifically, the Administrator will email such Class Members at least twice, and text them once if they do not respond, asking them to select a new payment method. Further, the Settlement Administrator will send an unclaimed payment reminder notice by email, text message and mail (*See* Exhibits 8 and 9) to any Class Member who was paid by check but has not cashed their check after 45 days.

98. **Allocation of Unclaimed Funds to Second Settlement Fund and/or *Cy Pres***. If the 90-day check deadline from the first distribution has passed, any unclaimed amounts from that distribution shall be reallocated to the Class in the second distribution. In the event that any unclaimed amounts remain in the Common Fund within 90 days of the second distribution (or of the single distribution, if there is only one distribution, pursuant to Paragraph 72 above), whether as a result of bounced-back direct deposits or uncashed checks, those remaining unclaimed amounts shall, if another distribution to the Class is impractical, be paid to Disability Rights New York as the designated *cy pres* beneficiary within thirty (30) days.

99. **Final Report of Settlement Administrator**. Within ten (10) business days after final disbursement of all funds from the Common Fund, including the *cy pres* payment, the Settlement Administrator will provide the Parties, via email, with a declaration constituting

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

a final report on the disbursements of all monies from the Common Fund, which may be filed with the Court (with appropriate redactions for personally identifiable information of members of the Settlement Class, if needed) if so ordered by the Court.

## VIII.   DATA PRODUCTION

100.   PPL shall provide documents and data reasonably necessary for the Accounting Firm to conduct the additional forensic accountings required after the Settlement Execution Date, pursuant to Section V.

101.   PPL shall cooperate in good faith to supplement necessary data upon Plaintiffs' or the Settlement Administrator's reasonable requests, so as to further effectuate Notice and the Settlement, and shall do so within a reasonable time frame.

## IX.   NOTICE PLAN

102.   The Parties agree to the following procedures to effectuate notice to the Settlement Class, subject to Court approval of this notice plan.

103.   **Updated Settlement Class Member Contact Information**. By no later than ten (10) days following Preliminary Approval, PPL shall provide the Settlement Administrator and Class Counsel updated contact information for the Settlement Class (the "Updated Class List") containing last known permanent address, birthdate, social security number and/or other Tax ID number (if any), email address, telephone number(s), and preferred language (if known), as well as updated banking/direct deposit information.

104.   **Email Notice**. Within ten (10) days after receiving the Updated Class List from PPL, the Settlement Administrator shall send the Email Notice, attached hereto as Exhibit 2, to all Settlement Class Members, to the last known email address on file. As seen in Exhibit 2,

the Email Notice also shall include a link to a Long Form Notice, attached hereto as Exhibit 3.

105. **Text Notice.** The same day as the Email Notice is sent (the "Initial Notice Date"), the Settlement Administrator shall send the Text Notice, attached hereto as Exhibit 4. Prior to sending the Text Notice, the Settlement Administrator shall use appropriate systems to verify that the phone numbers on file are cell phone numbers and remove any numbers from the list that are landlines.

106. **Undeliverable Emails or Texts**. Within five (5) days of the Initial Notice Date, the Settlement Administrator shall run any email addresses or phone numbers from which email/text notices were returned as undeliverable, or otherwise bounced back, through IDI skip-tracing to find an alternative email address or phone number to notice, and will then resend the appropriate notice to the newly located emails or phone numbers.

107. **Postcard Notice.** Within eight (8) days of the Initial Notice Date, the Settlement Administrator shall send the Postcard Notice, attached hereto as Exhibit 5, to any members of the Settlement Class whose emails were undeliverable and no alternative email was located and deliverable. Prior to mailing the Postcard Notice, the Settlement Administrator shall use appropriate systems to verify and/or update the mailing addresses for Settlement Class members to the extent possible.

108. If necessary, the Settlement Administrator may also attempt to contact any members of the Settlement Class who have not already received notice by telephone, email, or text to obtain information to facilitate notice.

109. **PPL Website/Mobile App Notice**. PPL shall provide Settlement Class members with a simple notice (attached hereto as Exhibit 6) linking to the Settlement Website on its regular

communication platforms (e.g., its website). Furthermore, PPL shall seek approval from the New York State Department of Health to post the simple notice on its mobile application and PPL@Home and, upon approval, shall post the simple notice (attached hereto as Exhibit 6) on its mobile application and PPL@Home.

110. **Settlement Website.** As soon as possible after Preliminary Approval, and no later than the Initial Notice Date, the Settlement Administrator shall also ensure the Settlement Website is published on the Internet. The Settlement Website shall:

a. Include the Long Form Notice;

b. Provide Settlement Class members a link where they can update their contact information;

c. Contain copies of the pleadings in this matter, including this Agreement, Class Counsel's fee petition, and copies of any orders issued by the Court in connection with this Settlement, after they are filed;

d. Provide a tollfree number through which questions can be directed to the Settlement Administrator;

e. Allow members of the Settlement Class to update their direct deposit information and/or mailing address for payment by check, with appropriate measures implemented by the Administrator to ensure security and prevent fraud.

f. Absent agreement by the Parties, not be taken down until the date on which any remaining Settlement funds are sent to *cy pres*;

g. Be updated by the Settlement Administrator (as directed mutually by the Parties upon their mutual agreement, which shall not be unreasonably withheld) as

appropriate regarding developments in the Action, such as the establishment of new deadlines by the Court; and

h. Allow Settlement Class members to upload a signed opt-out form to exclude themselves from the Class, pursuant to Paragraph 112 below.

## X. OPT-OUT AND OBJECTION PROCEDURES

111. All opt-outs and objections must be received by a date sixty (60) days after the Initial Notice Date ("the Objection/Opt-Out Deadline").

112. **Opt-Out/Exclusion Procedure.** Any member of the Settlement Class may request exclusion from the Settlement Class by "opting out." Any individual who opts out of the settlement will not receive any payment from the Settlement. Members of the Settlement Class who wish to be excluded must submit a written and signed request to the Settlement Administrator for exclusion from the Settlement which must include full name, date of birth, mailing address, email address and/or phone number (if available). To be effective, Settlement Class Members' exclusion requests must be either (a) postmarked (if sent by U.S. First Class Mail) by the Objection/Opt-Out Deadline, or (b) emailed or uploaded to the Settlement Administrator and received by the Objection/Opt-Out Deadline. An opt-out form that may be used is attached as Exhibit 7.

113. **Withdrawal of Opt-Out/Exclusion Request.** Any member of the Settlement Class who submits an exclusion request may withdraw that request by submitting a written and signed "request to withdraw opt-out" to the Settlement Administrator, which request to withdraw must include the Settlement Class Member's full name, date of birth, mailing address, email address, and/or phone number (if available). To be effective, the request to withdraw must be either (i) postmarked (if sent by U.S. First Class Mail) by the Objection/Opt-Out

Deadline, or (ii) emailed or uploaded to the Settlement Administrator and received by the Objection/Opt-Out Deadline. A request to withdraw form that may be used is attached as Exhibit 8.

114.   **Notice to Parties of Opt-Outs.** The Settlement Administrator shall make a written record or stamp on the original of any exclusion request the date the request was received, and, if received by U.S. First Class Mail, also record the postmark date of the request. The Settlement Administrator shall thereafter email copies of the exclusion request(s), inclusive of the date stamps, on Plaintiffs' Counsel and DWT not later than one week after receipt thereof. The Settlement Administrator shall, within five (5) days following the Objection/Opt-Out Deadline, send via e-mail a final list of all exclusion requests that were not withdrawn to Class Counsel and DWT. The Settlement Administrator shall retain copies of all exclusion requests and originals of all envelopes accompanying exclusion requests (including those that were later withdrawn) in its files until such time as the Settlement Administrator is relieved of its duties and responsibilities under this Agreement.

115.   The release set forth in Paragraph 84 will bind all Settlement Class Members who do not file a timely exclusion request, or those who file but timely withdraw such a request. However, Settlement Class Members who file and do not withdraw an exclusion request will not be bound by this Agreement or the release of claims set forth in this Agreement.

116.   **Objections.** Members of the Settlement Class who wish to present objections to the proposed Agreement at the Final Approval Hearing must first do so in writing. If a member of the Settlement Class wishes to object to the approval of this Agreement by the Court, the objector must submit a written statement of the basis for the objection to the Settlement Administrator. To be considered, such statement must be timely filed with the Settlement

Administrator by the Objection/Opt-Out Deadline and must contain all the following: (1) the case name and number; (2) the objector's full name, address, telephone number, and email address; (3) state the reasons for the objection; (4) state whether the objector or their lawyer intend to appear at the Final Approval hearing, and the lawyer's name; and (5) the objector's signature. The Settlement Administrator shall mark the date received on the original and send copies to the Parties by e-mail or facsimile and overnight delivery not later than five (5) days after receipt thereof. The Settlement Administrator or Class Counsel shall file any objections with the Court. An objector also has the right to appear at the Final Approval Hearing, either in person or through counsel hired by the objector, at the objector's cost. An objector who wishes to appear at the Final Approval Hearing must state their intention to do so at the time a written objection is submitted. An objector may withdraw an objection(s) at any time. An objector who does not submit an exclusion request is bound by the release set forth in this Agreement.

## XI. RIGHT TO CANCEL OR MODIFY

117. If more than 10% of the members of the Settlement Class opt out of the settlement, PPL will be able to exercise an option to terminate the settlement and to be relieved of any obligation to pay any portion of the Total Guaranteed Recovery, or any other obligation under any settlement. In this event, the Parties shall, absent entry into another Agreement, stipulate to decertify the Settlement Class, and the Parties shall continue with the litigation as of the date of this Agreement with all rights and defenses intact as if no agreement had occurred.

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

**XII.    PUBLICITY.**

118.    The Parties agree that, after the submission of the preliminary approval motion and through thirty (30) days following the date the Administrator has issued its final report pursuant to Paragraph 99, they each shall: (i) describe the allegations in a substantially similar, factual, and accurate manner as set forth in the Amended Complaint; (ii) not characterize PPL's or personal assistants' conduct as "theft," "fraud," "abuse," "stealing," or "exploitation"; and (iii) characterize claims under Labor Law Section 195 as "alleged violations of Labor Law Section 195 notice and recordkeeping requirements" or "alleged violations of notice and recordkeeping requirements" or "alleged violations of Labor Law Section 195" or "alleged violations of New York wage disclosure requirements." Notwithstanding the generality of the foregoing, nothing herein shall prohibit PPL from conducting an internal investigation of any personal assistant or consumer it believes may be engaged in fraud, waste or abuse in the normal course of PPL's operations.

119.    The Parties further agree that all of their communications about the Case and settlement will be made in the spirit of promoting approval of the settlement.

120.    The Parties further agree that Class Counsel shall ensure that updated or new Case-related text on their respective websites conforms with this Section XII, including, but not limited to, press releases posted on their websites.

121.    The Parties agree that Paragraphs 118-120 apply to: (1) all attorneys of KBK and DWT; (2) any employees of KBK, LAS, DWT, or PPL who worked on the Case and mediation process; (3) all counsel who have worked on the Case and mediation process; (4) all executive-level employees of LAS, KBK, or PPL; and (5) communications employees or agents working for LAS, KBK, DWT, or PPL.

## XIII. NO ADMISSION OF LIABILITY

122.   PPL's agreement to this Settlement Agreement is not, and shall not be construed as or argued to be, a direct or implied admission or acknowledgment of any wrongdoing, illegality, liability, culpability, or responsibility to any person or Party for any conduct or omission, alleged or unalleged, whatsoever. PPL disputes the Plaintiffs' allegations and claims, and enter into this Settlement solely for the purpose of eliminating these ongoing contested allegations and legal claims, repose, and to avoid the burden, uncertainty, delay, distraction, time and expense of litigation.

123.   Plaintiffs' agreement to this Settlement Agreement is not, and shall not be construed as or argued to be, a direct or implied admission or acknowledgement as to the validity of any claim or defense made by PPL.

## XIV. TIMING OF BRIEFING, FINAL FAIRNESS HEARING, AND PAYMENTS

124.   Plaintiffs and Class Counsel shall prepare a motion for preliminary approval to submit to the Court no later than June 23, 2026.

125.   As of the execution of this Agreement, Plaintiffs have provided PPL with a draft of the full preliminary approval papers so that PPL can provide comments no later June 16, 2026, and so that PPL can decide whether to join or not oppose the motion. In either case, PPL agrees not to oppose the preliminary approval motion, or the final approval motion, provided that PPL's reasonable changes are meaningfully considered by Class Counsel for incorporation into the motion papers.

126.   PPL reserves the right to file its own motion papers related to preliminary approval and final approval.

127. The Parties will work together to secure the Court's preliminary and final approval of the settlement and oppose any objections to the settlement.

128. This settlement is contingent upon the Court's preliminary and final approval. The Parties agree that non-material changes to the settlement required by the Court shall not be a basis to revoke the settlement.

129. As set forth above, the Parties also agree that Plaintiffs shall seek approval of the procedure in *Lundeen*, which includes the Court's approval of the full releases agreed to in Section VI above. For purposes of clarity, the Parties agree that the Court's preliminary and final approval of the procedure in *Lundeen*, which includes the Court's approval of the full releases agreed to in Section VI are material to the Settlement.

130. **Final Approval Hearing.** The Parties shall request that the Court conduct a Hearing for Final Approval of the Agreement no later than 150 calendar days after Preliminary Approval, or as soon thereafter as there is availability on the Court's calendar, provided that the hearing date shall be at least thirty (30) days after the Objection/Exclusion Deadline, and shall not occur earlier than ninety (90) days after the notice required by 28 U.S.C. § 1715(b) has been sent, pursuant to Paragraphs 102-108 above.

131. The Named Plaintiffs, through Class Counsel, shall move for final settlement approval by no later than thirty (30) days following the Opt-Out Deadline or as otherwise ordered by the Court, which motion PPL may join, or not oppose. The Named Plaintiffs will send a final draft of the brief for final settlement approval to DWT at least twenty-one (21) days in advance of filing it, so that PPL may can provide comments within ten (10) days thereafter and PPL can decide whether to join or not oppose the motion. In either case, PPL agrees not to oppose the final approval motion, provided that PPL's reasonable changes

are meaningfully considered by Class Counsel for incorporation into the motion papers. Plaintiffs will send a draft of any supporting papers at least fourteen (14) days in advance of filing the motion for final approval, with PPL to provide comments within seven (7) days thereafter.

132. **Fee Petition**. Class Counsel shall file the Fee Petition no later than five (5) days before the Objection/Opt-Out Deadline.

133. **Timing of Payments to the Class, Named Plaintiffs, and Class Counsel.** As soon as is practicable but no later than forty-five (45) days following the Settlement Effective Date, the Settlement Administrator shall distribute the first round of payments to Settlement Class Members, shall distribute any approved service awards to Named Plaintiffs, and shall wire from the Common Fund to Class Counsel any approved attorneys' fees and costs.

134. **Jurisdiction.** The Parties shall request that the Court retain jurisdiction to enforce the Settlement Agreement.

135. **Settlement Contingent on Preliminary and Final Approval.** This Settlement is contingent upon the Court's preliminary and final approval of a class action settlement on behalf of the Settlement Class described herein. The Parties reserve the rights to lodge objections to any report and recommendations by, or to seek reconsideration of or District Judge appeal of decisions by, the assigned Magistrate Judge.

136. **Right of Plaintiffs to Seek Approval a Second Time Without Changes to Settlement.** If the Court denies either the motions for preliminary or final approval in whole or in part, Plaintiffs shall have the right to submit the motion(s) a second time with consultation with PPL and PPL having a right to file its own motion papers related to a second effort for preliminary or final approval. If preliminary or final approval is denied after a second

attempt, the Parties shall enter into non-binding mediation with Marc Isserles (or other mutually agreeable mediator) to reach an alternative agreement.

137. The Parties agree that in the event the Settlement is not preliminarily or finally approved, they will work together in good faith to attempt to reach a new agreement on disapproved provisions such that the revised agreement would be acceptable to the Court.

138. If the Parties are unable to agree on a revised agreement to address the Court's concerns, and the Parties are unable to agree on any other agreement, the Term Sheet, this Agreement, and any other settlement of the Case shall be null and void, and the Parties shall stipulate to decertify the Settlement Class and may continue to litigate the Case as though this Agreement had never been executed.

139. In the event that the Plaintiffs and PPL do not agree on a revised agreement to address the Court's concerns, the Term Sheet, this Agreement and the underlying negotiations shall not be admissible for any purpose in any proceeding. The Plaintiffs and PPL shall be free to renegotiate any other settlement agreement or proceed with the litigation.

140. This Agreement shall terminate and be of no further force or effect without any further action by the Parties if (i) the Court determines not to grant preliminary or final approval of the Class Settlement; and (ii) the Parties do not agree to any changes to the Settlement required by the Court for approval or are unable or do not agree to obtain reconsideration and reversal or appellate review and reversal of any adverse decision by the Court regarding the Settlement.

141. **Dismissal of Action Upon Settlement Effective Date.** Upon the Settlement Effective Date, the Case shall be dismissed with prejudice in its entirety (and Plaintiffs shall take any necessary action to effectuate such dismissal with prejudice by the Court), except that the

Court will retain jurisdiction to enforce this Agreement, and the Case may be reinstated in the event PPL does not timely make the required Total Initial Monetary Payment and Reserve Fund pursuant to Paragraphs 63 and 64.

142. **Settlement Modification.** The Parties may agree by stipulation executed by counsel to modify the exhibits to this Agreement to effectuate the purpose of this Agreement or to conform to guidance from the Court about the contents of such exhibits without the need to further amend this Agreement. Any stipulation modifying the Settlement must be filed with the Court and is subject to the Court's approval.

## XV.  DISPUTE RESOLUTION.

143. Apart from the topics where mediation is required as specified in Paragraphs 136 & 144, the Parties shall also be required to enter non-binding mediation – if they are not otherwise able to resolve the issue within ten (10) business days – with Marc Isserles at JAMS (or other mutually agreeable mediator) to address any dispute concerning: (1) settlement terms that the Court requires or otherwise directs to be changed, or indicates that approval will not be granted based upon, but does not deny approval on the basis of; (2) settlement terms that cause the Court to deny preliminary or final approval on, where the Plaintiffs have not yet determined to attempt to resubmit the Agreement without changes; and (3) the forensic accountings conducted under Section V above, provided that if the Parties are unable to agree on the results of the forensic accountings under Section V for purposes of calculating payments under Paragraphs 65.b-c, and the parties are unable to reach any other agreement, this Agreement, and any other settlement of the Case, shall be null and void, and the Parties shall stipulate to decertify the Settlement Class and may continue to litigate the Case as though this Agreement had never been executed.

144. For purposes of clarity, if, after an initial submission for preliminary or final approval, or after resubmission for preliminary or final approval, the Court does not issue preliminary or final approval of the payment or release terms set forth in this Agreement (e.g., Sections IV and VI)—including, but not limited to, the Court's preliminary and final approval of the procedure in *Lundeen*, which includes the Court's approval of the full releases agreed to in Section VI, and the PTO Reconciliation—the Parties shall be required to enter non-binding mediation with Marc Isserles (or other mutually agreeable mediator) to reach an alternative agreement. If the Parties are unable to agree, the Term Sheet, any Settlement Agreement, and any other settlement of the Case shall be null and void, and the Parties shall stipulate to decertify the Settlement Class and may continue to litigate the Case as though this Agreement had never been executed.

145. The Parties may also enter non-binding mediation with Marc Isserles (or other mutually agreeable mediator) to address any other issues that arise that require resolution. The Parties may also agree to submit any dispute to arbitration under the JAMS rules.

## XVI. MISCELLANEOUS

146. **Incorporation of Recitals and Defined Terms.** The recitals and defined terms in the WHEREAS clauses are incorporated into this Agreement and made a part of hereof as though set forth herein verbatim.

147. **Authority.** The signatories below represent they are fully authorized to enter into this Agreement and to bind the Parties and the Settlement Class Members.

148. **Best Reasonable Efforts and Mutual Full Cooperation.** The Parties to this Agreement will use their best reasonable efforts, including all efforts contemplated by this Agreement and any other reasonable efforts that may become necessary or ordered by the Court, or

otherwise, to effectuate this Agreement and the terms set forth in it and to ensure that payments are made to Settlement Class Members in a timely manner. If any deadlines relating to this Agreement cannot be met, counsel for the Parties shall meet and confer in good faith to attempt to reach agreement on any necessary modifications to the deadlines. If agreement cannot be reached, either Party may request such an extension via motion to the Court.

149. **Non-Interference.** The Parties shall not take any act (or cause any act to be taken) to interfere with the approval of this Settlement or encourage or assist with an objection to this Settlement.

150. **Entire Agreement.** This Agreement, together with its exhibits, constitutes the full and entire agreement among the Parties with regard to the subject matter and supersedes all prior representations, agreements, promises, or warranties, written, oral, or otherwise. No Party shall be liable or bound to any other Party for any prior representation, agreement, promise, or warranty, oral or otherwise, except for those that are expressly set forth in or attached to this Agreement. For the avoidance of doubt, in the event of any material differences in terms between this Agreement and the Term Sheet, this Agreement shall control and take precedence over the Term Sheet.

151. **No Assignment of Claims.** The Parties represent that, as of the date this Agreement is executed, they have not assigned to any other person or entity any claim released under this Agreement.

152. **Enforceability.** This Agreement shall be binding upon and shall inure to the benefit of the successors, assigns, heirs, and trustees of the Parties hereto. PPL shall require any successor (whether direct or indirect, by purchase, merger, consolidation or otherwise) to all or

substantially all of its business and/or assets to assume expressly and agree to perform this Agreement in the same manner and to the same extent that PPL would be required to perform it if no such succession had taken place.

153. **Construction.** The Parties agree that the terms and conditions of this Agreement are the result of lengthy, arms-length negotiations between the Parties and that this Agreement will not be construed in favor of or against any Party by reason of the extent to which any Party or the Party's counsel participated in the drafting of this Agreement.

154. **Construction of Captions and Interpretation.** Paragraph titles, captions, or headings in this Agreement are inserted as a matter of convenience and for reference and in no way define, limit, extend, or describe the scope of this Agreement or any provision in it. Each term of this Agreement is contractual and is not merely a recital.

155. **Notices Between Parties to this Agreement.** All notices, requests, demands, and other communications required or permitted to be given pursuant to this Agreement shall be in writing, and shall be delivered by email and by hand delivery, overnight courier, or, unless specified otherwise in a provision of the Agreement, mailed, postage prepaid, by first class or express mail. All such notices, requests, demands, and other communications are to be sent to the undersigned persons at their respective addresses as set forth below:

*Counsel for Named Plaintiffs & the Settlement Class:*

**KATZ BANKS KUMIN LLP**
Hugh Baran
Emma Walters
Avi Kumin
111 Broadway, Suite 1403
New York, NY 10006
(646) 759-4501
Baran@KatzBanks.com
Walters@KatzBanks.com
Kumin@katzbanks.com

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

**THE LEGAL AID SOCIETY**
Richard Blum
Rebekah Cook-Mack
Michael Diller
B. Franco Olshansky
Elizabeth Saylor
Belkys Garcia
Rebecca Antar
49 Thomas Street, Fifth Floor
New York, NY 10013
(212) 577-3300
rblum@legal-aid.org
rcook-mack@legal-aid.org
mdiller@legal-aid.org
bfrancoolshansky@legal-aid.org
esaylor@legal-aid.org
brgarcia@legal-aid.org
rantar@legal-aid.org

*Counsel for PPL:*

**DAVIS WRIGHT TREMAINE LLP**
Roy Salins
Michael Goettig
Matteo Taraborrelli
1251 Avenue of the Americas
21st Floor
New York, NY 10020
(212) 603-6435
roysalins@dwt.com
michaelgoettig@dwt.com
matteotaraborrelli@dwt.com

156. The persons and addresses to which such communications shall be made may be changed from time to time by a written notice mailed as stated above.

157. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same Agreement. This Agreement may be executed by signature delivered by facsimile, PDF, text, or .jpg and need not be the original "ink" signature. A complete set of executed counterparts shall be filed with the

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

Court. This Agreement shall become binding upon its execution by the Named Plaintiffs and PPL's authorized representative.

*(The remainder of this page is intentionally blank.)*

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

IN WITNESS WHEREOF the Parties caused this Settlement Agreement to be duly executed.

*For Plaintiffs:*

| | |
|---|---|
| Philip Calderon | 6/23/2026 |
| | Date |
| Allison Fields | 6/23/2026 |
| | Date |
| Farshad Pinchasi | 6/23/2026 |
| | Date |
| Dana Folgar | 6/23/2026 |
| | Date |

For PPL:

Miki Kapoor                          Date
Chief Executive Officer

Docusign Envelope ID: 1B1DDFC8-63F2-8C35-80AA-2BEC980614BD

IN WITNESS WHEREOF the Parties caused this Settlement Agreement to be duly executed.

*For Plaintiffs:*

_____         _____
Philip Calderon                                              Date


_____         _____
Allison Fields                                               Date


_____         _____
Farshad Pinchasi                                             Date


_____         _____
Dana Folgar                                                  Date



For PPL:

Signed by:

*Miki kapoor*
872E927C686045D...
_____                             6/23/2026
_____
Miki Kapoor                                                  Date
Chief Executive Officer

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

# EXHIBIT 1

## ALLOCATION AND PTO RECONCILIATION PLAN

The Parties agree that the Common Fund shall be calculated and allocated amongst Settlement Class Members by the Settlement Administrator as follows.

DEFINITIONS

1. The definitions of the Settlement Agreement are incorporated herein by reference.

2. "Costs and Fees" means the Court-approved costs, attorneys' fees, settlement administration costs, and service awards, as provided in Paragraphs 67 through 69 of the Agreement.

3. "Net Total Initial Monetary Payment" means the Total Initial Monetary Payment minus Costs and Fees. The Costs and Fees shall be funded from the three (3) categories of the Total Initial Monetary Payment as follows: 28% of the Costs and Fees shall be subtracted from the General Damages Payment, 15% from the Guaranteed MEC Payment, and 57% from the PTO Payment.

4. "Net General Damages Payment" means the General Damages Payment after reduction for the proportionate amount of Costs and Fees.

5. "Net Guaranteed MEC Payment" means the Guaranteed MEC Payment after reduction for the proportionate amount of Costs and Fees.

6. "Net PTO Payment" means the PTO Payment after reduction for the proportionate amount of Costs and Fees.

7. "Class Member" means a member of the Settlement Class who has not opted out.

8. "Alleged Unpaid Bonus Claim" means an alleged claim under the NYLL held by Class Members who allegedly timely submitted paperwork to register with PPL on or before the March 30, 2025, deadline, but were not paid the sign-up bonus.

9. For purposes of this Allocation Plan, Plaintiffs' expert shall make the determinations

of who has an Alleged Unpaid Bonus Claim, hours worked, and amounts to be paid for all categories, and shall provide those determinations to the Administrator.

*Distribution of the Net Total Initial Monetary Payment*

10. The Net Total Initial Monetary Payment shall be distributed among Class Members, as follows.

    a. First, each Class Member who has an Alleged Unpaid Bonus Claim shall receive $50, to be paid from the Net General Damages Payment.

    b. Second, the remainder of the Net General Damages Payment shall be allocated amongst the Class Members proportionally, based on hours worked from March 1, 2025, to April 30, 2026, to determine *pro rata* allocations.

    c. Third, the Net Guaranteed MEC Payment shall be allocated amongst the Class Members proportionally, based on the amount of compensation allocated to health benefits per Class Member.

    d. Fourth, the Net PTO Payment shall be allocated amongst the Class Members proportionally, based on the available PTO balance of each Class Member as of the date PPL conducts the PTO Reconciliation.

11. The Settlement Administrator shall calculate the W-2 and 1099 portions of each of these payments based on the allocations in Paragraph 63 of the Agreement.

12. The Settlement Administrator shall then issue two payments (one W-2 payment and one 1099 payment) to each Class Member, and any legally required tax forms.

*Distribution of the Second Settlement Payment*

13. The Second Settlement Payment shall be distributed as follows.

14. Any portion of the Second Settlement Payment that came from the Reserve Fund shall

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

be allocated amongst the Class Members proportionally, based on hours worked from March 1, 2025, to April 30, 2026, to determine *pro rata* allocations. To the extent that there are unclaimed funds from the first distribution that have not been claimed following the Administrator's outreach, these funds shall be added to the Second Distribution.

15. Any portion of the Second Settlement Payment that came from the Additional MEC Fund shall be apportioned amongst the Class Members proportionally, based on the amount of compensation allocated to health benefits per Class Member.

16. The Settlement Administrator shall calculate the W-2 and 1099 portions of each of these payments based on the allocations in Paragraphs 64 & 65 of the Agreement.

17. The Settlement Administrator shall then issue two payments (one W-2 payment and one 1099 payment) to each Class Member, and any legally required tax forms.

*SINGLE DISTRIBUTION SCENARIO*

18. If, pursuant to Paragraph 72 of the Agreement, there is to be only a single distribution, the Net General Damages Payment will be combined with any portion of the Second Settlement Payment that comes from the Reserve Fund for calculation purposes, and the Net Guaranteed MEC Payment will be combined with any portion of the Second Settlement Payment that comes from the Additional MEC Fund for calculation purposes.

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

# EXHIBIT 2

## EMAIL NOTICE

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

**Notice ID:** <mark><<Secondary ID>></mark>

**To:** <mark><<Full_Name>></mark>

## You may be entitled to money if you were a personal assistant in the CDPAP program between March 1, 2025 and April 30, 2026.

The United States District Court has preliminarily approved a settlement in the class action lawsuit *Calderon et al v. Public Partnerships LLC* have reached a proposed settlement. This notice explains how the settlement may affect your rights, including your rights to pursue claims against Public Partnerships LLC under the **Fair Labor Standards Act** (FLSA)**, which you will release if you do not opt out of the Settlement Class**. **See the explanation below**.

For complete information about the Settlement and your options, visit www.PublicPartnershipsSettlement.com to view the full Settlement Notice, or call 1-800-314-2601. Notices and other information are available in other languages at www.PublicPartnershipsSettlement.com.

*You are not being sued. This is not a solicitation from a lawyer. This email notice was authorized by the U.S. District Court for the Eastern District of New York.*

### Why did I get this Notice?

You received this email Notice because Public Partnerships LLC identified you as a member of the group of people affected, called the "Class."

The Class includes all current and former personal assistants who were paid through PPL as the statewide fiscal intermediary for services performed as part of CDPAP in New York City, Nassau County, Suffolk County, and/or Westchester County (collectively, "downstate personal assistants") at any time between March 1, 2025 and April 30, 2026.

A text message notice was also sent to your last-known cell phone number. This email notice tells you how to get more information about this lawsuit.

### Do I Have to Do Anything?

No. The Settlement has not yet been finally approved by the Court.

If it is approved, you are automatically part of the settlement unless you opt out. Members of the Class will receive at least one payment. By default, payments will be made to you by direct deposit based on the most recent banking account information available to Public Partnerships. If none is available, payment will be sent to your last known address on file with Public Partnerships.

Please contact the Settlement Administrator, Atticus Administration, at 1-800-314-2601 if you wish to confirm your address or payment information.

## What is this lawsuit about?

Four individual plaintiffs, Philip Calderon, Allison Fields, Farshad Pinchasi, and Dana Folgar (collectively, the "Named Plaintiffs"), allege that Public Partnerships LLC failed to pay workers legally owed wages on time and at the correct rate, in violation of the Fair Labor Standards Act (FLSA) and the New York Labor Law. Plaintiffs also claim that Public Partnership's benefit offerings did not comply with New York's Home Care Worker Wage Parity Act. The Plaintiffs brought the case on behalf of the Class, as well as themselves.

## What is the position of Public Partnerships LLC?

Public Partnerships LLC disputes the allegations in the lawsuit, denies any wrongdoing and vigorously maintains that it has consistently acted in accordance with the governing laws at all times. Public Partnerships has entered this Settlement to avoid the time and expense of ongoing litigation and to remain fully focused on consumers and caregivers it supports across the country.

## Why is there a settlement in this lawsuit?

On May 1, 2026, the Named Plaintiffs and Public Partnerships LLC agreed to settle, which means they have reached an agreement to resolve the lawsuit. Both sides want to avoid the risk and expense of further litigation.

The Settlement is on behalf of the workers who brought the case and all members of the settlement class.  The Court has not decided this case in favor of either side. It has not decided whether anyone could recover specific amounts in this litigation.

## Has the Court determined that the Named Plaintiffs or Public Partnerships LLC have won?

No. This is a settlement. That means the case was resolved before the Court entered a judgment deeming any party the "winner".

## What does the Settlement provide?

The Settlement provides the following, which will be distributed to approximately 200,000 downstate personal assistants:

- $40.5 million in general damages;
- $25 million in Wage Parity compensation previously allocated to the Minimum Essential Coverage (MEC) plan;
- $92 million of accrued paid time off (the PTO balances of Class Members will be reconciled to reflect this distribution);
- A reserve fund of $4.5 million; and
- Any unspent funds allocated to the MEC plan after April 30, 2027.

The class will be paid after Court-approved litigation costs, fees for Class Counsel, costs of settlement administration, and service awards to each Plaintiff who brought this case are paid.

A diagram of all the payments Public Partnerships LLC has agreed to make is available by clicking here [add link].

In addition, as part of the Settlement, Public Partnerships LLC ended the mandatory MEC plan as of April 30, 2026, and will allow Plaintiffs to conduct accountings with a forensic expert on the MEC Plan and PTO program to ensure all available relief is paid to the Class.

**This is just a summary of the benefits available through the Settlement**. Please refer to the full Notice linked here and the Settlement Agreement linked here for all details.

### How will your payment be determined?

The amount you receive as a class member will depend on several factors: (1) how many hours you have worked in CDPAP while registered and paid through the fiscal intermediary Public Partnerships LLC between March 1, 2025, and April 30, 2026; (2) whether you were eligible for but not paid the sign-on bonus; (3) the amount of your compensation allocated to MEC benefits; and (4) the amount of your compensation allocated for PTO and how much is remaining in your PTO balance.

### Are there taxes and who pays them?

Yes, the settlement funds will be taxable income. More information about taxes is in the full notice, available here.

### What claims am I releasing in the Settlement?

In exchange for the benefits provided by the Settlement, Class Members will release all claims asserted in this action, and give up the right to sue Public Partnerships LLC and related entities/individuals in the future for the same claims and for all wage and hour claims between March 1, 2026, and June 23, 2026. **This includes all claims under the FLSA, the New York Labor Law, and the Home Care Worker Wage Parity Act**.

Importantly, the above release includes claims arising under the FLSA, which is the federal minimum wage and overtime law.

**Therefore, if you do not opt out from the settlement, and the Court approves the settlement, you will release any claims against Public Partnerships under the FLSA, including any alleged unpaid wages owed under the FLSA and any available liquidated damages, through June 23, 2026.**

To read the full scope of the release, please read the full notice [add link] or Part VI of the Agreement [add link].

If you have any questions about the scope of this release, please call the Administrator, contact Class Counsel using the contact information below.

## Can I Opt Out of the Settlement?

Yes, you can opt out. If you do, you **will not** receive payment and cannot object to the Settlement. However, you will not be bound or affected by anything that happens in this lawsuit and may be able to file your own case. To opt out of the Settlement, you must complete the opt out form here and mail it by [DATE] to the Settlement Administrator at:

Public Partnerships Settlement
c/o Atticus Administration
PO Box 64053
St. Paul, MN 55164
1-800-314-2601

Be sure to include your name, address, telephone number, and signature.

## What happens next in this lawsuit?

The Court will hold a Fairness Hearing to decide whether to grant final approval of the Settlement. The Hearing will be held at:

**Where:** U.S. District Court for the Eastern District of New York
Courtroom XX
225 Cadman Plaza East
Brooklyn, NY 11201
**When:** [TIME] on [HEARING DATE].

The Court has directed the Parties to send you this Notice about the proposed Settlement. Because the Settlement of a class action decides the rights of all members of the proposed class, the Court must give final approval to the Settlement before it can take effect. Payments will only be made if the Court approves the Settlement.

You don't have to attend, but you may at your own expense. You have the right to enter an appearance in the case through an attorney if you so desire, at your own expense. You may also ask the Court for permission to speak and express your opinion about the Settlement. If the Court does not approve the Settlement or the Parties decide to end it, it will be void and the lawsuit will move forward. The date of the Hearing may change without further notice to members of the class. To learn more and confirm the hearing date, go to www.PublicPartnershipsSettlement.com.

## How do I get more information?

This Notice is a summary of the proposed Settlement. The complete settlement with all its terms can be found <mark>here</mark>. To get a copy of the Settlement Agreement or get answers to your questions:

- visit the case website at www.PublicPartnershipsSettlement.com
- call the Administrator at 1-800-314-2601
- access the Court Electronic Records (PACER) system online or by visiting the Clerk's office of the Court (address below).

| Resource | Contact Information |
| --- | --- |
| Case website | www.PublicPartnershipsSettlement.com |
| Settlement Administrator | Public Partnerships Settlement<br>c/o Atticus Administration<br>PO Box 64053<br>St. Paul, MN 55164<br>1-800-314-2601<br>PublicPartnershipsSettlement@AtticusAdmin.com |
| Your Lawyers | **KATZ BANKS KUMIN LLP**<br>Hugh Baran<br>Emma Walters<br>Avi Kumin<br>111 Broadway, Suite 1403<br>New York, NY 10006<br><mark>XXX-XXX-XXXX</mark><br>PPLSettlementInquiries@katzbanks.com<br><br>**THE LEGAL AID SOCIETY**<br>Richard Blum<br>Rebekah Cook-Mack<br>Michael Diller<br>B. Franco Olshansky<br>Elizabeth Saylor<br>Belkys Garcia<br>Rebecca Antar<br>49 Thomas Street, Fifth Floor<br>New York, NY 10013<br><mark>XXX-XXX-XXXX</mark><br>civ_hq_employment@legal-aid.org |

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

| Court (DO NOT CONTACT) | U.S. District Court for the Eastern District of New York<br>225 Cadman Plaza East<br>Brooklyn, NY 11201 |
|---|---|

**For complete information, visit [www.PublicPartnershipsSettlement.com](http://www.PublicPartnershipsSettlement.com) or call 1-800-314-2601.**

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

# EXHIBIT 3

## LONG FORM NOTICE

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D



U.S. District Court for the Eastern District of New York

## *Philip Calderon et al v. Public Partnerships LLC*
Case No. 25-cv-2320 (FB)(LKE)

# Class Action Notice

## *Authorized by the U.S. District Court*
### *Available in other languages at PublicPartnershipsSettlement.com*

| | | |
|---|---|---|
| **Are you a personal assistant who was paid through Public Partnerships LLC as the statewide fiscal intermediary for services performed as part of the Consumer Directed Personal Assistant Program (CDPAP) in New York City, Nassau County, Suffolk County, and/or Westchester County between March 1, 2025 and April 30, 2026?** | **You may be entitled to money.** <br><br> **The United States District Court has preliminarily approved a settlement in the class action lawsuit** *Calderon et al v. Public Partnerships LLC* **have reached a proposed settlement.** | **To learn more about this settlement, read this Notice or visit the Settlement Website.** |

**Key things to know:**

- If you take no action, you will automatically be a member of the class and may get money from the settlement. Unless you opt-out, the Court's decision will apply to you, and you will not be able to sue Public Partnerships, LLC about the same issues.

- **Among other claims, this settlement releases any claims against Public Partnerships arising under the Fair Labor Standards Act (FLSA), which is the federal wage and hour law, through June 23, 2026**. If you do not exclude yourself from the settlement by opting out of the settlement, and the Court approves the settlement, you will waive the right to make a claim for any FLSA violations, including any alleged unpaid wages owed under the FLSA and any available liquidated damages, through June 23, 2026.

- You can learn more at: **www.PublicPartnershipsSettlement.com**

# Table of Contents

**About This Notice** ........................................................................................................ **3**

Why did I get a notice by email or text message? ........................................................ 3

What do I do next? ............................................................................................................ 3

**Learning About the Lawsuit** ...................................................................................... **4**

What is this lawsuit about? ............................................................................................... 4

What is the position of  Public Partnerships? ................................................................ 5

Why is there a settlement in this lawsuit? ..................................................................... 5

Has the Court determined that Plaintiffs or  Public Partnerships have won? .......... 6

What happens next in this lawsuit? ................................................................................ 6

**Learning About the Settlement** ................................................................................ **6**

What does the Settlement provide? ................................................................................ 6

How do I know if I am part of the Settlement? .............................................................. 7

How much will my payment be? ...................................................................................... 8

Are there taxes and who pays them? .............................................................................. 8

What am I giving up to stay in the Settlement Class ..................................................... 8

**Deciding What to Do** ................................................................................................... **9**

How do I weigh my options? ............................................................................................ 9

**Receiving a Payment** ................................................................................................. **10**

How will I get my payment? ............................................................................................ 10

Do I have a lawyer in this lawsuit? ................................................................................ 10

Do I have to pay the lawyers in this lawsuit? ............................................................... 11

**Opting Out** ................................................................................................................... **11**

What if I don't want to be part of this Settlement? ..................................................... 11

How do I opt out? ............................................................................................................ 11

**Objecting** ..................................................................................................................... **12**

What if I disagree with the Settlement? ....................................................................... 12

**Doing Nothing** ............................................................................................................ **13**

What are the consequences of doing nothing? ........................................................... 13

**Key Resources** ............................................................................................................ **13**

How do I get more information? ..................................................................................... 13

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

# About This Notice

## Why did I get a notice by email or text message?

**If you received a notice by email or text message, our records identify you as a member of the group of people affected, called the "Class."** This notice is to tell you about the Settlement of a class action lawsuit, **_Calderon et al v. Public Partnerships LLC_.** The proposed settlement would cover all current and former personal assistants who provided services as part of Consumer Directed Personal Assistants Program (CDPAP) in New York City, Nassau County, Suffolk County, and/or Westchester County (collectively, "downstate personal assistants"), at any time between March 1, 2025 and April 30, 2026, and who were paid through Public Partnerships LLC as the statewide fiscal intermediary. The Settlement Agreement, explains what rights Class members have, and helps Class members make informed decisions about what action to take.

If you received a postcard notice in the mail, it is because we could not reach you by email or text message. You are still part of the Class. You should log into the Settlement Website to update us with your contact information or email or call the Settlement Administrator (PublicPartnershipsSettlement@atticusadmin.com, 1-800-314-2601).

If you think you are a member of the class but did not receive an email, text, or postcard, call the Settlement Administrator at 1-800-314-2601.

## What do I do next?

Read this Notice to understand the settlement and determine if you are a Class member. Then, decide if you want to:

| Options | More information about each option |
| --- | --- |
| **Do Nothing** | If you do nothing, you will get a payment. The amount you receive will depend on several factors, including: (1) how many hours you have worked in CDPAP while registered and paid through the fiscal intermediary Public Partnerships LLC between March 1, 2025, and April 30, 2026; (2) whether you were eligible for but not paid the sign-on bonus; (3) the amount of your compensation allocated to MEC benefits; and (4) the amount of your compensation allocated for PTO and how much is remaining in your PTO balance.<br><br>You will also give up rights resolved by settlement. Specifically, you will give up the right to sue Public Partnerships for the claims |

| | |
|---|---|
| | made in this Action, and all other related wage-and-hour claims through the June 23, 2026. This release includes any potential claims under the Fair Labor Standards Act, the New York Labor Law, the New York State Paid Safe and Sick Leave Act, the New York City Paid Safe and Sick Leave Act, the Home Care Worker Wage Parity Act, and for breach of contract. See the section "What am I giving up to stay in the Settlement Class" below. |
| | You may also benefit from changed practices. Specifically, as of April 30, 2026, Public Partnerships no longer requires employees to participate in the MEC plan. Further details about the changes that would benefit you are provided in the section "Learning About the Settlement" below. |
| **Opt Out** | If you opt out, you will not receive any payment, but you will keep the right to bring any claims you may have against Public Partnerships.<br><br>See the section "Opting Out" below. |
| **Object** | Tell the Court why you don't like the settlement. You cannot object if you opt out. If you object and the settlement is approved anyway, you will still get a payment. See the section "Objecting" below. |

Read on to understand the specifics of the settlement and what each choice would mean for you.

# Learning About the Lawsuit

## What is this lawsuit about?

Four individual plaintiffs, Philip Calderon, Allison Fields, Farshad Pinchasi, and Dana Folgar (the "Plaintiffs" or "Class Representatives") claim that Public Partnerships failed to pay workers all legally owed wages on time and at the correct rate, in violation of the Fair Labor Standards Act and the New York Labor Law.

Plaintiffs also claim that Public Partnerships' benefit offerings did not comply with New York's Home Care Worker Wage Parity Act. The Plaintiffs brought the case on behalf of the Class, as well as themselves.

### Where can I learn more?
You can get a complete copy of the proposed settlement and other key documents in this lawsuit at: PublicPartnerships**Settlement.com**

The proposed settlement would cover all current and former personal assistants who were paid through Public Partnerships as the statewide fiscal intermediary for services performed as part of CDPAP in New York City, Nassau County, Suffolk County, and/or Westchester County (collectively, "downstate personal assistants") at any time between March 1, 2025 and April 30, 2026..

## What is the position of  Public Partnerships?

Public Partnerships disputes the allegations in the lawsuit and denies any wrongdoing.  Public Partnerships has entered this settlement to avoid the time and expense of ongoing litigation, and to remain fully focused on consumers and caregivers it supports across the country.

## Why is there a settlement in this lawsuit?

On May 1, 2026, Plaintiffs and Public Partnerships agreed to settle, which means they have reached an agreement to resolve the lawsuit. Both sides want to avoid the risk and expense of further litigation.

The settlement is on behalf of the workers who brought the case and all members of the Settlement Class.  The Court has not decided this case in favor of either side, nor determined that anyone could recover any certain amount in this litigation.

### What is a class action settlement?
A class action settlement is an agreement between the Parties to resolve and end the case. Settlements can provide money to Class members and changes to the practices that the Plaintiffs allege caused harm to Class members.

If approved, the settlement will stop the lawsuit from being litigated any further. If the case continued to be litigated, there is a possibility that Public Partnerships would win and the workers would receive nothing. There is also the possibility that Public Partnerships would be required to pay more than they have agreed to pay under the settlement.

Class Counsel, the attorneys at Katz Banks Kumin LLP and The Legal Aid Society representing the Plaintiffs, investigated the facts and applicable law regarding the claims and defenses. The Parties engaged in lengthy and arms' length negotiations to reach this Settlement with the help of a neutral third-party mediator. The Class Representatives and Class Counsel believe that the proposed Settlement is fair, reasonable, and adequate and in the best interests of the Class.

## Has the Court determined that Plaintiffs or Public Partnerships have won?

No. This is a settlement. That means the Parties resolved the matter before the Court entered a judgment deeming any party the "winner."

## What happens next in this lawsuit?

The Court will hold a fairness hearing to decide whether to approve the Settlement. The final fairness hearing will be held at:

**Where:** U.S. District Court for the Eastern District of New York
Courtroom XX, 225 Cadman Plaza East, Brooklyn, NY 11201

**When:** [TIME] on [HEARING DATE].

The Court has directed the Parties to send you Notice about the proposed settlement. Because the settlement of a class action decides the rights of all members of the proposed class, the Court must give final approval to the Settlement before it can take effect. Payments will only be made if the Court approves the settlement.

You don't have to attend, but you may at your own expense. You have the right to enter an appearance in the case through an attorney if you want. You may also ask the Court for permission to speak and express your opinion about the settlement. If the Court does not approve the settlement or the Parties decide to end it, it will be void and the lawsuit will continue. The date of the hearing may change without further notice to members of the class. To learn more and confirm the hearing date, go to **www.Public PartnershipsSettlement.com**.

# Learning About the Settlement

## What does the Settlement provide?

The Settlement provides the following, which will be distributed to approximately 200,000 downstate personal assistants:
- $40.5 million in general damages;
- $25 million in Wage Parity compensation previously allocated to the Minimum Essential Coverage (MEC) plan;
- $92 million of accrued paid time off (the PTO balances of Class Members will be reconciled to reflect this distribution);

6

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

- A reserve fund of $4.5 million; and
- Any unspent funds allocated to the MEC plan after April 30, 2027.

The class will be paid after Court-approved litigation costs, fees for Class Counsel, costs of settlement administration, and service awards to each Plaintiff who brought this case are paid.

A diagram of all the payments Public Partnerships has agreed to make is below:



In addition, as part of the Settlement, Public Partnerships ended the mandatory MEC plan as of April 30, 2026, and will allow Plaintiffs to conduct accountings with a forensic expert on the MEC Plan and PTO program to ensure all available relief is paid to the Class.

This is just a summary of the benefits that are available through the Settlement. Please refer to the full Settlement Agreement linked here for all details.

## How do I know if I am part of the Settlement?

If you received an email, text, or Postcard Notice, the records of Public Partnerships indicate that you are a member of the Settlement Class. The Settlement Class includes all current and former personal assistants who were paid through Public Partnerships as the statewide fiscal intermediary for services performed as part of CDPAP in New York City, Nassau County, Suffolk County, and/or Westchester County (collectively, "downstate personal assistants") at any time between March 1, 2025 and April 30, 2026.

.

If you did not receive an email, text, or Postcard Notice and believe you are a member of the Settlement Class, email or call the Settlement Administrator ([PublicPartnershipsSettlement@atticusadmin.com](mailto:PublicPartnershipsSettlement@atticusadmin.com), 1-800-314-2601).

## How much will my payment be?

Your payment amount will depend on several factors:

(1) how many hours you have worked in CDPAP while registered and paid through the fiscal intermediary Public Partnerships LLC between March 1, 2025, and April 30, 2026;

(2) whether you were eligible for but not paid the sign-on bonus;

(3) the amount of your compensation allocated to MEC benefits; and

(4) the amount of your compensation allocated for PTO and how much is remaining in your PTO balance.

## Are there taxes and who pays them?

Yes, the settlement funds will be both W2 earnings, from which taxes will be withheld, and 1099 earnings, for which you are responsible for paying taxes. You will be responsible for paying taxes on all settlement payments you receive, regardless of whether you receive a 1099 (Federal law only requires these forms to be sent to those receiving more than $2,000 in non-wage damages).

In addition to the settlement amount, Public Partnerships will pay the employer's side of taxes.

Neither Defendants nor Class Counsel are providing you tax advice though this Settlement, so you will be responsible for seeking your own tax and/or accounting advice regarding your tax obligations.

## What am I giving up to stay in the Settlement Class

If the Court approves this Settlement, the Settlement will come into effect 30 days after the approval order is entered, provided that there are no appeals of the Court's decision. When the settlement comes into effect, all Settlement Class Members who have not timely and properly opted out of the Settlement Class will release Public Partnerships and all "Public Partnerships Releasees" (as defined in the Settlement

Agreement) from the following claims:

(1) any and all claims raised on behalf of the Settlement Class or Settlement Collective or that could have been raised on behalf of the Settlement Class or Settlement Collective based on the facts alleged in the First Amended Complaint, and (2) any and all wage-and-hour claims through the Settlement Execution Date (collectively, the "Released Class Claims"). Without limiting the foregoing, the Released Class Claims include all federal, state, and local claims for wages, compensation, paid time off, or paid leave benefits, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs and expenses that the Settlement Class and Settlement Collective may have had as of the Settlement Execution Date, including, but not limited to, all claims under the Fair Labor Standards Act (FLSA), Wage Parity Act (WPA), New York Labor Law (NYLL), New York Labor Law § 195, Earned Safe and Sick Time Act (ESSTA), Paid Sick and Safe Leave Law (PSSLL), breach of contract, and any related regulations, ordinances or Wage Orders, Employee Retirement Income Security Act (ERISA) claims related to any aspect of the MEC or the MEC-related payments set forth in Section IV, and any other claim asserted in the First Amended Complaint. This release does not include claims based on conduct occurring after June 23, 2026.

This means that Class Members will release all claims asserted in this action, and give up the right to sue Public Partnerships in the future for the same claims and for all wage and hour claims between March 1, 2026, and June 23, 2026, as set forth above.

Importantly, the above release includes claims arising under the FLSA, which is the federal wage and hour law. Plaintiffs believe this is fair because all claims under the FLSA overlap with state law claims asserted under the applicable New York wage laws. **If you do not opt out from the settlement, and the Court approves the settlement, you will waive the right to make a claim for any FLSA violations, including any alleged unpaid wages owed under the FLSA and any available liquidated damages, through June 23, 2026.**

As noted above, the release may affect your rights, and may carry obligations, in the future. To view the full terms of this release that are contained in the Settlement Agreement, as well as the Plaintiffs' First Amended Complaint and other related documents, please click here.

# Deciding What to Do

## How do I weigh my options?

You have four options. You can do nothing and receive settlement money, you can opt

out of the settlement, or you can object to the settlement. This chart shows the effects of each option:

| | Do Nothing | Opt out | Object |
|---|---|---|---|
| **Can I receive settlement money if I . . .** | YES | NO | YES |
| **Am I bound by the terms of this lawsuit if I . . .** | YES | NO | YES |
| **Can I pursue my own case if I . . .** | NO | YES | NO |
| **Will the class lawyers represent me if I . . .** | YES | NO | NO |

# Receiving a Payment

## How will I get my payment?

If Public Partnerships sent your pay by direct deposit when you provided services with Public Partnerships, your settlement payment will be made by direct deposit to the last bank account you had on file with Public Partnerships. If you received your pay from Public Partnerships by check, your settlement payment will be made by check.

Please contact the Settlement Administrator, Atticus Administration, at 1-800- 314-2601 if you wish to confirm your address or payment information.

If you want to receive your payment by check and you have moved since you worked for Public Partnerships, you can also update your mailing address to receive your check by clicking here.

## Do I have a lawyer in this lawsuit?

In a class action, the court appoints class representatives and lawyers to work on the case and represent the interests of all the class members. For this Settlement, the Court has appointed the following individuals and lawyers.

**Your lawyers:** Katz Banks Kumin LLP (Hugh Baran, Emma Walters, and Avi Kumin) and The Legal Aid Society (Richard Blum, Rebekah Cook-Mack, Michael Diller, B. Franco Olshansky, Elizabeth Saylor, Belkys Garcia, and Rebecca Antar) have been appointed as Class Counsel.

These are the lawyers who negotiated this Settlement on your behalf.

If you want to be represented by your own lawyer, you may hire one at your own

expense.

## Do I have to pay the lawyers in this lawsuit?

Lawyers' fees and costs will be paid from the Settlement Fund. **You will not have to pay the lawyers directly.**

To date, your lawyers have not been paid any money for their work or the expenses that they have paid for the case. To pay for their time and risk in bringing this case without any guarantee of payment unless they were successful, your lawyers will request, as part of the final approval of this settlement, that the Court approve a payment of up to 15% of the Settlement Fund in attorneys' fees, plus reimbursement of out-of-pocket expenses, as well as the costs of settlement administration.

Lawyers' fees and expenses will only be awarded if approved by the Court as a fair and reasonable amount. You have the right to object to the lawyers' fees even if you think the settlement terms are fair.

Your lawyers will also ask the Court to approve service payments of $15,000 to each of the Class Representatives (Philip Calderon, Allison Fields, Farshad Pinchasi, and Dana Folgar) for the time and effort they contributed to the case. If approved by the Court, the Service Awards will be paid from the Settlement Fund.

# Opting Out

## What if I don't want to be part of this Settlement?

You can opt out. If you do, you will not receive payment and cannot object to the Settlement. However, you will not be bound or affected by anything that happens in this lawsuit and may be able to file your own case. You cannot exclude yourself from the program changes called for by the proposed Settlement.

## How do I opt out?

To opt out of the Settlement, you must complete the opt out form here and mail it by DEADLINE, 2026 to the Settlement Administrator at:

Public Partnerships Settlement
c/o Atticus Administration

11

PO Box 64053
St. Paul, MN 55164
1-800- 314-2601

You may also upload the form by logging into the Settlement Website, www.PublicPartnershipsSettlement.com, or by emailing it to the Administrator. If you send an opt-out form this way, you must send it so it is received by DEADLINE, 2026.  Be sure to include your name, address, date of birth, telephone number, and signature.

# Objecting

## What if I disagree with the Settlement?

If you disagree with any part of the Settlement (including the lawyers' fees) but don't want to opt out, you may object. You must give reasons why you think the Court should not approve the settlement and say whether your objection applies to just you, a part of the Class, or the entire Class. The Court will consider your views. The Court can only approve or deny the Settlement — it cannot change the terms of the Settlement. You may, but don't need to, hire your own lawyer to help you, at your own expense.

To object, you must send a letter to the Administrator that:

(1) is postmarked by [DEADLINE];
(2) includes the case name and number (*Calderon et al v. Public Partnerships LLC*, Case No. 25-cv-2320 (FB)(LKE))
(3) includes your full name, address and telephone number, and email address;
(4) states the reasons for your objection;
(5) says whether you or your lawyer intend to appear at the Final Approval Hearing and your lawyer's name;
(6) your signature.

Mail the letter to:

Public Partnerships Settlement
c/o Atticus Administration
PO Box 64053
St. Paul, MN 55164

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

# Doing Nothing

## What are the consequences of doing nothing?

If you do nothing, you will get a payment and other relief and will be bound by the settlement and its "release" provisions. That means you won't be able to start, continue, or be part of any other lawsuit against Public Partnerships (or any related entities or individuals) about the issues in this case, **including any claims against Public Partnerships under the Fair Labor Standards Act (FLSA) through June 23, 2026.** A full description of the claims and persons who will be released if this settlement is approved can be found here.

# Key Resources

## How do I get more information?

This Notice is a summary of the proposed Settlement. The complete settlement with all its terms can be found here. To get a copy of the Settlement Agreement or get answers to your questions:

- call the administrator (1-800- 314-2601)

- visit the case website at www.PublicPartnershipsSettlement.com

- access the Court Electronic Records (PACER) system online or by visiting the Clerk's office of the Court (address below).

| Resource | Contact Information |
|---|---|
| **Case website** | www.PublicPartnershipsSettlement.com |
| **Settlement Administrator** | Public Partnerships Settlement<br>c/o Atticus Administration<br>PO Box 64053<br>St. Paul, MN 55164<br>1-800-314-2601<br>PublicPartnershipsSettlement@atticusadmin.com |
| **Your Lawyers** | **KATZ BANKS KUMIN LLP**<br>Hugh Baran<br>Emma Walters<br>Avi Kumin |

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

|  | 111 Broadway, Suite 1403<br>New York, NY 10006<br><mark>XXX-XXX-XXXX</mark><br>PPLSettlementInquiries@katzbanks.com<br><br>**THE LEGAL AID SOCIETY**<br>Richard Blum<br>Rebekah Cook-Mack<br>Michael Diller<br>B. Franco Olshansky<br>Elizabeth Saylor<br>Belkys Garcia<br>Rebecca Antar<br>49 Thomas Street, Fifth Floor<br>New York, NY 10013<br><mark>XXX-XXX-XXXX</mark><br>civ_hq_employment@legal-aid.org |
| **Court (DO NOT CONTACT)** | U.S. District Court for the Eastern District of New York<br>225 Cadman Plaza East<br>Brooklyn, NY 11201 |

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

# EXHIBIT 4

# TEXT NOTICE

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

**[NAME]: You may be eligible to receive money from a class action settlement in the case Calderon v. Public Partnerships LLC**

If you were paid through PPL as the statewide fiscal intermediary for services performed as part of CDPAP in New York City, Nassau County, Suffolk County, and/or Westchester County (collectively, "downstate personal assistants") at any time between March 1, 2025 and April 30, 2026, you may qualify.

Learn more about the settlement and your rights at:
www.PublicPartnershipsSettlement.com or call 1-800-314-2601

*This notice was authorized by the U.S. District Court for the Eastern District of New York.*

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

# EXHIBIT 5

## POSTCARD NOTICE

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D



## COURT ORDERED NOTICE

*Calderon et al v. Public Partnerships LLC*

## Class Action Settlement Notice

QR CODE

The United States District Court has preliminarily approved a settlement in the class action lawsuit *Calderon et al v. Public Partnerships LLC*. **You may be entitled to money**. This notice summarizes the settlement.

Full Settlement terms are available at www.PublicPartnershipsSettlement.com and the QR Code above.

---

*Public Partnerships Settlement*
C/O Atticus Administration
PO Box 64053
St. Paul, MN 55164

PRESORT
FIRST CLASS
U.S. POSTAGE
PAID

<<ENVELOPE_BARCODE>>
<<Claimant_ID>> <<SEQ_ID>>

Postal Service: Please do not mark barcode

Notice ID: <<Secondary ID>>

<<Full Name>>
<<ADDR1>>
<<ADDR2>>
<<CITY>> <<ST>> <<ZIP>>

---

**Am I a Class Member and What Does the Settlement Provide?** You received this Notice because Public Partnerships LLC identified you as a member of the group of people affected, called the "Class". This case involves claims that Public Partnerships did not pay workers in accordance with the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL). Plaintiffs also claim that Public Partnership's benefit offerings did not comply with the Wage Parity Act. You are automatically included if you are a current or former personal assistant who was paid through Public Partnerships LLC as the statewide fiscal intermediary for services performed as part of the Consumer Directed Personal Assistant Program (CDPAP) in New York City, Nassau County, Suffolk County, and/or Westchester County at any time between March 1, 2025 and April 30, 2026.

The Settlement provides the following, which will be distributed to approximately 200,000 Class Members: (1) payment of general damages; (2) payment of Wage Parity compensation previously allocated to the Minimum Essential Coverage (MEC) plan; (3) payment of accrued paid time off (the PTO balances of Class Members will reconciled to reflect this distribution); (4) a reserve fund; and (5) any unspent funds allocated to the MEC plan after April 30, 2027. The class will receive payment after Court-approved litigation costs, fees for Class Counsel, costs of settlement administration, and service awards to each Plaintiff who brought this case are paid. Payments will be distributed after payment of court-approved costs and fees and service awards to Plaintiffs, with court approval. More details are in the Long-Form Notice & full Settlement Agreement (both available at www.PublicPartnershipsSettlement.com). This Notice is just a summary.

**What is the position of Public Partnerships?** Public Partnerships LLC disputes the allegations in the case, denies any wrongdoing and vigorously maintains that it has consistently acted in accordance with the governing laws at all times. It has settled to avoid the time and expense of ongoing litigation.

**How will I get paid?** If you are eligible, you will receive a direct deposit to the last bank account you had on file with Public Partnerships, or a check.

**What claims am I releasing in this settlement?** In exchange for the benefits provided by the Settlement, Class Members will release all claims asserted in this action, and give up the right to sue Public Partnerships LLC in the future for the same claims and for all wage and hour claims between March 1, 2026, and June 23, 2026. **This includes claims under the FLSA, NYLL, and the Wage Parity Act. The FLSA is the federal minimum wage and overtime law. If you do not opt out, and the Court approves the settlement, you will waive the right to make a claim for any FLSA violations, through June 23, 2026**.

**What If I Don't Like the Settlement?** You can exclude yourself from the case or object to the Settlement. If you do not exclude yourself, you cannot sue Public Partnerships for the claims released in this case, but you will receive one or more of the benefits described above. To exclude yourself, write the Settlement Administrator by [DEADLINE]. To object to the proposed Settlement, you must file a timely written objection by [DEADLINE].

**Who Represents Me?** The Court has appointed Katz Banks Kumin (PPLSettlementInquiries@katzbanks.com) and The Legal Aid Society (civ_hq_employment@legal-aid.org) as Class Counsel.

**What Happens Next In the Lawsuit?** The Court will hold a hearing to consider final approval of the proposed Settlement on [DATE] at [TIME].

**How Do I Get More Information?** Visit www.PublicPartnershipsSettlement.com, email PublicPartnershipsSettlement@atticusadmin.com, or call 1-800-314-2601. A full notice is also available at the website, including by scanning the QR code on the front of this postcard.

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

# EXHIBIT 6

## PPL WEBSITE NOTICE

***To be posted to*** [https://pplfirst.com/programs/new-york/ny-consumer-directed-personal-assistance-program-cdpap/](https://pplfirst.com/programs/new-york/ny-consumer-directed-personal-assistance-program-cdpap/). *Following **PPL's request to DOH and contingent on DOH approval, on the mobile app and PPL@Home***:

**NEW YORK**

New York State Department of Health

# NY Consumer Directed Personal Assistance Program (CDPAP)

**IMPORTANT PROGRAM NOTICES**

**NOTICE OF SETTLEMENT: You may be eligible to receive money from a class action settlement.** If you were paid through PPL as the statewide fiscal intermediary for services you performed as a personal assistant in the Consumer Directed Personal Assistance Program (CDPAP) in New York City or Nassau, Suffolk, and/or Westchester Counties between March 1, 2025 and April 30, 2026, you may qualify.

Learn more about the settlement and your rights at: [www.PublicPartnershipsSettlement.com](http://www.PublicPartnershipsSettlement.com) or call 1-800-314-2601

*This notice was authorized by the U.S. District Court for the Eastern District of New York.*

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

# EXHIBIT 7

# OPT-OUT FORM

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

# Class Action Settlement Opt-Out Form

*Calderon et al v. Public Partnerships LLC,* Case No. 25-cv-02320
United States District Court for the Eastern District of New York

**This form excludes you from the class action settlement.**
**To opt out, fill out form below and mail <u>OR</u> email to address provided.**

This is not a claim form. **If you complete this form, you will not get money from this case. You will be choosing not to participate in the class action.** However, you will keep your rights to pursue your own litigation with your own lawyer at your expense, including the ability to pursue claims under the Fair Labor Standards Act, which is the federal minimum wage and overtime law. If you exclude yourself from this Settlement, you will NOT be allowed to object to Court's approval of the Settlement.

**To opt out of this class action, do <u>one</u> of the following:** complete the form below and submit it to the notice administrator via U.S. mail <u>OR</u> email the form.

This form must be signed and sent no later than [DEADLINE]. If you mail it, make sure it is postmarked by [DEADLINE]. Your form must be sent to:

Public Partnerships Settlement
c/o Atticus Administration
PO Box 64053
Saint Paul, MN 55164
PublicPartnershipsSettlement@AtticusAdmin.com

<u>ONLY</u> COMPLETE THIS DOCUMENT IF YOU WISH TO EXCLUDE YOURSELF FROM THIS SETTLEMENT. IF YOU SUBMIT THE FORM AND EXCLUDE YOURSELF, YOU WILL <u>NOT</u> RECEIVE A PAYMENT FROM THIS SETTLEMENT.

**By completing this form to exclude yourself from this Settlement, you are agreeing to and confirming the following:** I have received notice of this action. It is my decision to be excluded from this Settlement. I understand that by excluding myself I will <u>not</u> receive a Settlement Payment from the Settlement.

_____          _____
*Date*                                                                          *Signature*

_____
*Full Name (First, Middle, Last)*

_____          _____
*Mailing Address*                                                        *City, State, ZIP*

_____          _____
*Phone Number*                                                        *Email Address*

_____
*Date of Birth*

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

# EXHIBIT 8

# WITHDRAWAL OF OPT-OUT FORM

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

## <u>REQUEST TO WITHDRAW PREVIOUSLY SUBMITTED EXCLUSION/OPT-OUT FORM</u>

*Calderon et al v. Public Partnerships LLC*

United States District Court for the Eastern District of New York

Case No. 25-cv-02320

If you previously submitted a request for exclusion ("Opt Out" Form) and you no longer wish to be excluded from this Settlement, you must fill out and submit this form by [DEADLINE].

**IF YOU ALREADY OPTED OUT, AND THEN SUBMIT THIS FORM BY [DEADLINE], AND IF THE SETTLEMENT IS APPROVED, <u>YOU WILL RECEIVE A SETTLEMENT PAYMENT</u>.**

**FURTHER INFORMATION REGARDING THE SETTLEMENT PAYMENTS AND RELEASES CAN BE FOUND AT [LINK]**

**<u>ONLY</u> COMPLETE THIS DOCUMENT IF YOU WISH TO <u>WITHDRAW</u> YOUR OPT-OUT FORM AND REMAIN IN THE SETTLEMENT CLASS. YOU DO NOT NEED TO COMPLETE THIS FORM IF YOU NEVER SUBMITTED AN OPT-OUT REQUEST.**

**This document must be sent via email to PublicPartnershipsSettlement@atticusadmin.com or postmarked no later than [DEADLINE] and sent via U.S. Mail to:**

Public Partnerships Settlement
c/o Atticus Administration
PO Box 64053
Saint Paul, MN 55164

**By completing this form to withdraw your previously submitted exclusion request, you are agree to the following:**

It is my decision to withdraw my exclusion request and remain in the Settlement Class. I understand that by remaining in this Settlement I will be bound by the Settlement and its "release" provisions.

| | |
|---|---|
| *Date* | *Signature* |

| |
|---|
| *Full Name (First, Middle, Last)* |

| | |
|---|---|
| *Mailing Address* | *City, State, ZIP* |

| | |
|---|---|
| *Phone Number* | *Email Address* |

| |
|---|
| *Date of Birth* |

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

# EXHIBIT 9

## PAYMENT ACCEPTANCE REMINDER NOTICES

## *(POSTCARD, EMAIL, TEXT)*

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D



## COURT ORDERED
## PAYMENT REMINDER NOTICE

### *Calderon et al v. Public Partnerships LLC*

Payment Reminder Notice on Reverse

*Public Partnerships Settlement*
C/O Atticus Administration
PO Box 64053
St. Paul, MN 55164

PRESORT
FIRST CLASS
U.S. POSTAGE
PAID

<<ENVELOPE_BARCODE>>
<<Claimant_ID>> <<SEQ_ID>

Postal Service: Please do not mark barcode

Notice ID: <<Secondary ID>>

<<Full Name>>
<<ADDR1>>
<<ADDR2>>
<<CITY>> <<ST>> <<ZIP>>

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

## IMPORTANT: CASH YOUR SETTLEMENT CHECK

A settlement has been reached with Public Partnerships, LLC in a class action lawsuit. Public Partnerships disputes the allegations in the lawsuit, denies any wrongdoing, and has entered this Settlement to avoid spending the time, expense, and resources associated with ongoing contested legal proceedings.

You should have already received notices of the settlement and a check. These Notices summarize the proposed Settlement. The full terms are available at the Settlement Website, which you can access through this QR Code:



The Settlement Administrator's records show that you have not cashed or deposited your settlement check. **If you do not do so by [DATE], the amount set forth in your check will be redistributed to other Class members, and/or sent to a non-profit organization.**

If you have lost or did not receive your check, or prefer payment through another method, please contact the Settlement Administrator as soon as possible at 1-800-314-2601 or by email at PublicPartnershipsSettlement@atticusadmin.com

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

# *EMAIL VERSION*:

**Notice ID:** <mark><<Secondary ID>></mark>

**To:** <mark><<Full_Name>></mark>

## IMPORTANT: CASH YOUR SETTLEMENT CHECK

A settlement has been reached with Public Partnerships LLC in a class action lawsuit. Public Partnerships disputes the allegations in the lawsuit, denies any wrongdoing, and has entered this Settlement to avoid spending the time, expense, and resources associated with ongoing contested legal proceedings.

You should have already received notices of the settlement and a check. These Notices summarize the proposed Settlement. The full terms are available at the Settlement Website, which you can access through at
[www.PublicPartnershipsSettlement.com](www.PublicPartnershipsSettlement.com)

The Settlement Administrator's records show that you have not cashed or deposited your settlement check. **If you do not do so by [<mark>DATE</mark>], the amount set forth in your check will be redistributed to other Class members, and/or sent to a non-profit organization.**

If you have lost or did not receive your check, or prefer payment through another method, please contact the Settlement Administrator as soon as possible at 1-800-314-2601 or by email at PublicPartnershipsSettlement@atticusadmin.com

## *TEXT VERSION*:

[NAME]: You have not cashed your check from a class action settlement in the case Calderon v. Public Partnerships LLC

The Settlement Administrator's records show that you have not cashed or deposited your settlement check. **If you do not do so by [DATE], the amount set forth in your check will be redistributed to other Class members, and/or sent to a non-profit organization.**

If you have lost or did not receive your check, or prefer payment through another method, please contact the Settlement Administrator as soon as possible at 1-800-314-2601 or by email at PublicPartnershipsSettlement@atticusadmin.com

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

# EXHIBIT 10

## PROPOSED PRELIMINARY APPROVAL ORDER

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

PHILIP CALDERON, FARSHAD PINCHASI,
ALLISON FIELDS, and DANA FOLGAR,
*on their own behalf and on behalf of all others
similarly situated,*

         *Plaintiffs,*

   - against -


PUBLIC PARTNERSHIPS, LLC,

         *Defendant.*

Civ. Action No.:
1:25-cv-02320 (FB)(LKE)

## [PROPOSED] ORDER GRANTING PRELIMINARY SETTLEMENT APPROVAL AND PRELIMINARILY CERTIFYING THE SETTLEMENT CLASS

Based on Plaintiffs' Unopposed Motion for Preliminary Approval of the proposed class Settlement between Plaintiffs and Defendant, and good cause shown therein, Preliminary Approval, including Class Certification under Rule 23 for settlement purposes only, is GRANTED as set forth below in accordance with Federal Rule of Civil Procedure 23, the FLSA, and other applicable law.

1. Certification for Settlement Purposes Only. Pursuant to Federal Rule of Civil Procedure 23 and the FLSA, the Court certifies, for settlement purposes only, the following Settlement Class:

Settlement Class: All current and former personal assistants who were paid through PPL as the statewide fiscal intermediary for services performed as part of CDPAP in New York City, Nassau County, Suffolk County, and/or Westchester County

Docusign Envelope ID: 493CD715-4631-8BE4-83A4-979CFD2EB21D

(collectively, "downstate personal assistants") at any time between March 1, 2025 and April 30, 2026.

2.      In connection with certification, the Court makes the following findings for settlement purposes only:

     a.      The Settlement Class is so numerous that joinder of all members is impracticable;

     b.      There are questions of law or fact common to the Settlement Class for purposes of determining whether this Settlement should be finally approved;

     c.      The Class Representatives' claims are typical of the claims being resolved through the proposed Settlement;

     d.      The Class Representatives and their counsel are capable of fairly and adequately protecting the interests of the Settlement Class Members in connection with the proposed Settlement;

     e.      Common questions of law and fact predominate over questions affecting only individual persons in the Settlement Class, making the Settlement Class sufficiently cohesive to warrant settlement by representation;

     f.      Certification of the Settlement Class is superior to other available methods for the fair and efficient resolution of the claims of the Settlement Class; and

     g.      The requirements of Fed. R. Civ. P. 23(b)(2) are met because the relief agreed to is appropriate respecting the class as a whole.

The object of settlement is to avoid a determination of contested issues. The parties vigorously dispute the merits of the case and whether this case could proceed as a class action. For purposes of settlement only, and without any prejudice to Defendant to oppose any motion for

class certification if the Settlement Agreement is not finally approved and the Parties are unable to reach another agreement, the Court finds Plaintiffs meet all of the requirements for class certification.

3.   Class Counsel. Katz Banks Kumin LLP and The Legal Aid Society are hereby APPOINTED as Class Counsel.

4.   Class Representatives. Philip Calderon, Farshad Pinchasi, Allison Fields, and Dana Folgar are hereby APPOINTED Class Representatives.

5.   Preliminary Approval of the Settlement is warranted because the proposed settlement is within the range of reasonableness. The Court preliminarily finds the Settlement within the range of reasonableness based on:

(a) the complexity, duration, and procedural posture of the Action;

(b) the risks and costs of continued litigation;

(c) the significant relief for Settlement Class Members;

(d) the adequacy of representation Class Representative and Class Counsel provided;

(e) the absence of fraud or collusion between the parties in reaching the Settlement; and

(f) the equitable allocation of funds between class members.

6.   Class Notice. The proposed notices are APPROVED for distribution in accordance with the Settlement Agreement. The parties are permitted to make non-substantive changes prior to distribution and posting, including to add applicable deadlines and contact information.

7.   Atticus Administration LLC is APPOINTED as Settlement Administrator.

3

8.      Opt-Outs and Objections. Putative Settlement Class Members shall have the right to opt out or to object to this Settlement pursuant to the procedures included in the Settlement Agreement. The deadline to opt out, or object is sixty (60) days from the Initial Notice Date.

9.      Final Approval Hearing. A Final Approval Hearing is set for _____, 2026 at _____, before Judge _____, at the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York 11201, Courtroom _____. The Court reserves the right to adjourn or continue the date of the final approval hearing and all dates provided for in the Agreement without further notice to Class Members and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

10.     The Action is stayed and all trial and any pre-trial dates are vacated, subject to further orders of the Court at the Final Approval Hearing.


Dated:_____                    _____
                                                Honorable Frederic Block
                                                United States District Court Judge