

**Poricanin**

Practical counsel. Industry insight.

Emina Poricanin, Esq.

emina@poricaninlaw.com
(315) 269-1125
poricaninlaw.com

July 7, 2026

*Via ECF*

The Hon. Lara K. Eshkenazi
United States Magistrate Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East, Brooklyn, NY 11201

> **Re:** *Calderon et al. v. Public Partnerships, LLC*, No. 1:25-cv-02320 (FB)(LKE)

Dear Magistrate Judge Eshkenazi:

We write on behalf of our clients, Johnnie Flanagan and Laura Chapman, who are the named plaintiffs in the putative class and collective wage-and-hour action, *Flanagan v. Public Partnerships, LLC,* 6:25-cv-06225-FPG-CDH, which is currently pending in the United States District Court for Western District of New York. Like the *Calderon* action, the *Flanagan* action seeks class and collective relief on behalf of personal assistants employed by Public Partnerships, LLC ("PPL") in New York State's Consumer Directed Personal Assistance Program ("CDPAP"). The *Flanagan* action was filed on April 23, 2025, two days before the *Calderon* action.

We have reviewed the transcript of the July 1, 2026 hearing that was held before the Court in the *Calderon* matter. At the hearing, counsel for PPL, Mr. Salins, advised the Court of his client's intention to have its personal assistants enter arbitration agreements with class- and collective-action waivers. PPL recently attempted to roll out such arbitration agreements to its personal assistants through a mobile application, but subsequently withdrew them. Now, it appears PPL is intent on re-introducing arbitration agreements with class- and collective-action waivers. For the Court's convenience, I have attached an excerpt from the hearing transcript containing the relevant discussion as **Exhibit A**.

Any roll out of arbitration agreements with class- and collective-action waivers is likely to have a substantial adverse impact on the *Flanagan* plaintiffs and the class and collective they seek to represent. Indeed, Mr. Salins suggested that one reason PPL was seeking to proceed with the arbitration agreement rollout on an immediate basis was the pendency of the *Flanagan* action in the Western District. Ex. A at 22, lines 2-20. That is troubling because the *Flanagan* action is currently subject to a stay pending a court-mandated mediation that is scheduled for Thursday, July 30, 2026. We are concerned that PPL's rush to institute arbitration agreements seems

**New York City**

3 Colombus Circle, 15TH Floor
New York City, NY 10019

434 W. 33rd Street, 10TH Floor
New York City, NY 10001

**Albany**

90 State Street, Suite 700
Albany, NY 12207

**Buffalo**

50 Fountain Place, Suite 1400
Buffalo, NY 14202



Emina Poricanin, Esq.

emina@poricaninlaw.com
(315) 269-1125
poricaninlaw.com

calculated to circumvent the *Flanagan* court's continuing supervision, and if so, indicative of bad faith given the parties' agreement to stay proceedings pending mediation in that action.

It is our understanding that the *Calderon* plaintiffs are also objecting to the roll out of arbitration agreements and the Court has directed the parties in the *Calderon* action to engage in further discussions on the issue and submit a joint status letter on or before Wednesday July 8, 2026. Pending submission of that letter, we respectfully request that the Court not take any action that would permit PPL to proceed with arbitration agreements without first allowing our clients to be heard on the matter.

We thank the Court for its consideration of this letter and are prepared to provide any additional information the Court may find helpful.

Respectfully submitted,

PORICANIN LAW, P.C.

By: *Emina Poricanin*

Emina Poricanin
Poricanin Law, P.C.
52 Madeleine Lane
Glenmont, New York 12077
emina@poricaninlaw.com
(315) 269-1125

cc:      All Counsel of Record via ECF

**New York City**

3 Colombus Circle, 15TH Floor
New York City, NY 10019

434 W. 33rd Street, 10TH Floor
New York City, NY 10001

**Albany**

90 State Street, Suite 700
Albany, NY 12207

**Buffalo**

50 Fountain Place, Suite 1400
Buffalo, NY 14202

# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PHILIP CALDERON,                    *      Case No. 25-CV-2320(FB)
                                    *
                 Plaintiff,         *      Brooklyn, New York
                                    *      July 1, 2026
     v.                             *
                                    *
                                    *
PUBLIC PARTNERSHIPS, LLC,           *
                                    *
                 Defendant.         *
                                    *
* * * * * * * * * * * * * * * *

        TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
          BEFORE THE HONORABLE LARA K. ESHKENAZI
             UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:                  HUGH BARAN, ESQ.
                                    EMMA C. WALTERS, ESQ.
                                    Katz Banks Kumin LLP
                                    111 Broadway, Suite 1403
                                    New York, NY 10006

                                    MICHAEL KENNEDY DILLER, ESQ.
                                    RICHARD ELLIOT BLUM, ESQ.
                                    The Legal Aid Society
                                    Employment Law Unit
                                    49 Thomas Street
                                    New York, NY 10013

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**Shelton, CT 06484 (203)732-6461**

2

APPEARANCES:  (Cont'd)

For the Defendant:                 ROY P. SALINS, ESQ.
                                   MICHAEL JOHN GEOTTIG, ESQ.
                                   MATTEO TARABORELLI, ESQ.
                                   Davis Wright Tremaine LLP
                                   1251 Avenue of the Americas
                                   New York, NY 10020

3

(Proceedings commenced at 11:01 p.m.)

THE CLERK: Motion hearing 25-CV-2320.  Can everyone state their appearance for the record?

MR. BARAN:  Good morning, Your Honor.  Hugh Baran, Katz Banks Kumin, LLP.  Pronouns are he/him, representing plaintiffs.

THE COURT:  Good morning.

MS. WALTERS: Good morning, Your Honor.  Emma Walters, also from Katz Banks Kumin, pronoun, she/her, also representing plaintiffs.

THE COURT:  Good morning.

MR. DILLER:  Good morning, Your Honor.  Michael Diller from the Legal Aid Society.  Pronouns, he/him.

THE COURT:  Good morning.

MR. BLUM:  Good morning.  Richard Blum from the Legal Aid Society, he/him.

THE COURT:  Good morning.

MR. SALINS:  Good morning, Your Honor.  Roy Salins of Davis Wright Tremaine.

THE COURT:  Good morning.

MR. GOETTING:  Good morning, Your Honor. Michael Goettig, with the law firm of Davis, Wright, Tremaine, he/him.

THE COURT:  Good morning.

MS. DREXLER:  Deborah Drexler from Public Partnerships.

19

going to submit the papers for final approval or will you just submit it?

MR. BARAN:  I think, Your Honor, 30 days after the opt out period would be sufficient.

THE COURT:  So the opt out period would be --

MR. BARAN:  So that would be -- I think in -- 110 days.  Okay.  That would be --

MR. SALINS:  October 19th.

MR. BARAN:  October 19th, as my able counterpart on the other side has already calculated.

THE COURT:  Okay.  October 19th for submission of the final approval papers. Okay.

MR. BARAN:  And Your Honor, just to clarify, that would include our motion for attorney's fees and service awards --

THE COURT:  And all the contemporaneous billing records and all of that.  Yes.

MR. BARAN:  Of course.

THE COURT:  Okay.

MR. BARAN:  Thank you, Your Honor.

THE COURT:  Yes.  Anything else?

MR. SALINS:  I have one additional issue that I'd like to address before the end of the hearing today.

THE COURT:  Sure.

MR. SALINS:  And I don't see it as related to the

20

issue of preliminary approval that we've just gone through.

But I just wanted to highlight this as a matter with which we'll be seeking the court's assistance. And I just didn't want to wait and then ask later. I wanted to bring it up now, just be up front about it.

So what PPL has identified as an operational priority establishing a voluntary dispute resolution procedure for its personal assistance that would include an arbitration agreement and class action waiver that has full disclosures of this case and carve outs. And we've actually been in discussion with plaintiff's counsel about it.

But I just wanted to highlight that for you. It would, you know, have a mechanism by which a PA could decline to participate in the dispute resolution procedure.

But in light of our present circumstances and the pending class action, we just want to assure that we have court assistance and approval to, you know, ensure the best way possible that there's a lack of confusion to the class.

We want to do this the right way before implementing the dispute resolution procedure. You know, we don't want to implement and then have issues. We'd rather -- we want to be able to work with the court and with plaintiff's counsel to be able to get this accomplished. And I just wanted to highlight that now.

THE COURT: Okay. Do you want to --

21

MR. BARAN:  So, Your Honor, we first learned about defendant's desire to introduce a forced arbitration provision when it was rolled out via a pop up notification in the PPL mobile application last Tuesday night, after PPL had signed the settlement agreement and we were -- at the same time as we were filing these papers.

Given the language of that provision and the timing of its rollout, we raised the concern with PPL's counsel that it was likely to cause significant class member confusion. And PPL withdrew the provision and announced on its website that it had been rescinded.

We know that it caused significant class member confusion from many personal assistant message boards and Facebook forums.

And since then, PPL has raised with us, as we just noted to you, the idea of reintroducing another arbitration provision.

We don't believe that this issue is related to the instant motion, or doesn't impact the court's decision on it, but we do still oppose the introduction of an arbitration provision until after final approval.

And we would ask that the court permit the parties to separately brief this issue, whether by letter briefs or by formal briefs, whatever the court desires, and that the parties be able to confer and advise separately as to a

22

briefing schedule for that.

THE COURT: Okay. But is that necessary or can PPL agree not to do this at this time?

I mean, it does seem to raise significant confusion during this time period for the class. The timing does seem unfortunate in terms of what's going to be happening in the next 150 days. Is there a reason why PPL feels the need to do this now?

MR. SALINS: Well, Your Honor, it's the operation of -- being the fiscal intermediary for the CDPAP, you know, brings about -- as you know, there's this lawsuit, there's another one in the Western District of New York.

It brings about significant risk of these kinds of lawsuits, which is why there's, as I said before, an operational priority to have a voluntary. It's not forced, it's not a requirement to perform services as a personal assistant --

THE COURT: But as we all know, like these agreements to arbitrate -- I handle many motions to compel arbitration.

Like often people don't know what they're signing or they haven't fully read it or they don't fully -- you know, I mean there are a lot of things that go into these mandatory arbitration provisions.

And I'm just a little bit concerned that while class

23

notification is going out and all this is happening, that you're introducing that as well is going to cause a lot of confusion, may cause individuals actually not to specifically -- they may not know what they're signing, which could create more risk, frankly, on your end.

MR. BARAN:  And Your Honor, if I may also add, there's a concern that even if there were an opt out procedure and an arbitration provision that actually might cause people to opt out of the settlement, unintentionally depriving them of the benefits of the settlement at the same time just thinking that they're opting out of the arbitration provision.

MR. SALINS:  So we would have the language to make it very clear to avoid that.  And I would point out that there are scenarios like this where courts approve these.  It happens regularly if it's --

THE COURT:  During the class settlement process?

MR. SALINS: During the class process.

THE COURT:  Yeah.  During like the same period between the preliminary and final approval where you have members opting in and out of a settlement?

MR. SALINS: During preliminary and final approval, I believe so, yes, Your Honor.  And we would welcome the opportunity to submit something in writing because it is important to my client and that's why we brought it up now instead of just doing something and then being --

24

THE COURT:  I mean, look.  You can --

MR. SALINS:  -- do it another way.

THE COURT:  You're welcome to brief it.  I would, though urge you to discuss with your client whether this timing makes the most sense and whether they would be -- because this issue preexisted this lawsuit, right?

I mean, you're saying they want to do it to avoid lawsuits like this one.  So this issue preexisted and it's going to still exist after this lawsuit.

I don't know why this period of 110 days, it's so crucial for them to do this.  It seems like it would be safer to do it after all the opt ins and opt outs of the class so that individuals are not confused by what they're opting in and out of.

MR. SALINS: I understand.

THE COURT:  And you're opening yourself up to further litigation and confusion based on that, I think.

Because if someone does accidentally sign the wrong opt in or opt out form, then there may be further litigation about that.  But if you want to brief it, that's fine.  I'm just -- I'm giving you my initial thoughts, and I may not be the one deciding it.  It may be Judge Block.  I have no idea. But I just -- it's just something for your client to think about.

MR. SALINS:  Thank you, Your Honor.

25

THE COURT: So in the meantime, do you want a briefing schedule on this, or do you want to talk and then submit a joint status letter and let me know?

MR. SALINS: I think a joint status letter would make sense.

MR. BARAN: That's fine for us, Your Honor.

THE COURT: Okay. How much time do you need to talk and submit a letter?

MR. SALINS: A week -- is that -- does that work you, Hugh?

MR. BARAN: A week is fine.

THE COURT: Okay. So --

MR. SALINS: To submit the status letter.

THE COURT: To submit the status letter, yes.

So a joint status letter by July 8th on this issue. Okay. Is there anything else from either side?

MR. BARAN: Nothing further from plaintiffs, Your Honor.

MR. SALINS: Nothing further, Your Honor. Thank you.

THE COURT: All right. Thank you. Have a good rest of your day.

MR. BARAN: You too.

(Proceedings concluded at 11:30 a.m.)

26

I, CHRISTINE FIORE, court-approved transcriber and certified electronic reporter and transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

*Christine Fiore*

July 2, 2026

Christine Fiore, CERT

    Transcriber