KATZ BANKS KUMIN

**Hugh Baran, Partner**
**Emma Walters, Senior Associate**
**Phone: 646-759-4501**
**Email: baran@katzbanks.com**
**walters@katzbanks.com**

August 21, 2026

**Via ECF**
The Hon. Lara K. Eshkenazi, United States Magistrate Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East, Brooklyn, NY 11201

Re: *Philip Calderon, et al. v. Public Partnerships, LLC*, No. 25-cv-02320 (FB)(LKE)

Dear Judge Eshkenazi:

Katz Banks Kumin LLP and The Legal Aid Society represent Plaintiffs and Class Representatives Philip Calderon, Farshad Pinchasi, Allison Fields, and Dana Folgar, and the preliminarily certified Settlement Class of downstate personal assistants in the above-referenced matter. We submit this sur-reply pursuant to the Court's August 18, 2026 Order to explain Plaintiffs' continued opposition to the request by Defendant Public Partnerships, LLC ("PPL") to distribute its proposed arbitration provision to Settlement Class Members beginning on September 20, 2026.

PPL's proposed arbitration provision—even as amended in its Reply, ECF. No. 70—will confuse Settlement Class Members and interfere with the notice process and ultimate disposition of the proposed Settlement. *See* Pls.' Opp. & Mot. For 23(d) Order, ECF No. 69, at 8. As we explained in Plaintiffs' opposition, while the risk of interference and confusion is at its "peak during the opt-out period of the Settlement," it does "not abate until a final approval order is issued by the Court," for five reasons. *Id.*

First, in proposing to delay the rollout of the arbitration provision until September 20, PPL appears to have conceded that a rollout prior to that date would cause more opt outs and objections. But nothing about the opt-out deadline itself will avoid the potential effect on Settlement Class Members. Even after the ministerial opt-out deadline, Settlement Class Members will continue to learn about and understand their rights under the Settlement, and the unrelated arbitration provision distributed in parallel will undoubtedly lead to confusion. As discussed in our prior opposition, parallel processes will lead many Settlement Class Members to believe that the arbitration provision is a term of the Settlement. *Id*. This concern does not abate after September 20, but rather will continue if PPL rolls out an arbitration provision at any time prior to final approval. Further, personal assistants may believe they have been tricked into assenting to an arbitration provision as part of the settlement *after* the opt-out deadline has passed.

Second, Class Counsel anticipate that should PPL deliver the proposed arbitration provision a day after the opt-out period closes, many Settlement Class Members will try to submit late opt outs from the Settlement (and perhaps do so thinking they are opting out of the arbitration provision), which the Court would have to adjudicate. It may also cause those Settlement Class Members to object and appear at the hearing—accusing PPL, Class Counsel, or the Court of

misleading them as to the Settlement's terms—and possibly appeal a decision granting final approval of the Settlement based on that misunderstanding.

Third, PPL's Reply again glosses over the mechanism of the proposed rollout. This is not simply a case where PPL will send one email or text notice of the provision. Rather, PPL is asking this Court to approve a process by which PPL alerts personal assistants to the arbitration provision *every time* they log into the PPL mobile timekeeping application. Those alerts will continue until the personal assistant has acknowledged the provision on the PPL@Home website.[1] Accordingly, the personal assistant will encounter messages at least twice every workday (when they clock in and out of shifts) about the arbitration provision. This will only further the misconception among Settlement Class Members that the arbitration provision is a term of the Settlement, leading to objections and opposition—and a potential lengthy appeal.

Fourth, the risk of interference does not abate after the opt-out deadline because the Court could require changes to the Settlement Agreement up until it grants final approval. Such changes may necessitate further supplemental notice to Settlement Class Members and an opportunity to opt out. Any such supplemental notice would then compete with PPL's daily reminders about the arbitration provision.

Fifth, and contrary to PPL's assertions, Settlement Class Members continue to be confused about the impact of the previous arbitration provision. Indeed, the screenshots submitted by PPL in support of its Reply show this very confusion, where personal assistants continue to ask whether they are still bound by the botched June 23 arbitration provision. *See, e.g.*, ECF No. 70-5, Ex. E to Def.'s Reply ("What if we agreed to be able to sign out[?]"). Class Counsel has received repeated questions from Settlement Class Members on this exact issue. These types of questions will continue until the Court's decision on final approval. Despite PPL's attempts to isolate the revised proposed arbitration provision from its own history, the harms inflicted by PPL's initial botched rollout persist and are inherently intertwined with PPL's newest attempt to force personal assistants to arbitrate disputes.

While PPL and its private equity backers may strongly wish to insulate PPL from being held accountable before judges and juries for potential future violations of the Labor Law, Fair Labor Standards Act, and Wage Parity Act, they should not be permitted to send this reckless communication to 200,000 Settlement Class Members at the very same time those individuals are continuing to learn about their rights under this Settlement.[2]

---

[1] Notably, PPL's proposed reminder process mirrors a previous communication campaign in which it continued to "remind" personal assistants about overtime rules by phone and text message—out of stated concern for personal assistants' "health"—which caused confusion about whether personal assistants were allowed to work their authorized hours.

[2] PPL also seems to misleadingly represent the legal claims that were at issue in this action, in its reference to class action lawyers "argu[ing] incorrectly that PPL is liable to pay for hours allegedly worked in violation of CDPAP program rules, regardless of the facts that the unauthorized work cannot be paid by Medicaid and that PPL has no ability to prevent or curtail that unauthorized work." PPL Reply at 2. The instant action involved, *inter alia*, Plaintiffs' allegations that PPL failed to pay personal assistants on time and at the correct rate in violation of the NYLL and

Any arbitration provision implemented before the action is final simply runs the risk of confusing matters for Settlement Class Members and delaying their ultimate receipt of the benefits of the Settlement. That is not a risk this Court should permit. We remind the Court that there is no other reported case that PPL has identified where a defendant was allowed to promulgate a forced arbitration provision to class members between preliminary and final approval. *See* Pls.' Opp. at 8-10; *see also* ECF No. 59, Tr. at 22:5-7 ("The timing does seem unfortunate in terms of what's going to be happening in the next 150 days.").

Accordingly, Plaintiffs reaffirm their request that this Court enter Plaintiffs' proposed order (ECF No. 69-6) or one substantially similar thereto and—pursuant to Rule 23(d)—deny PPL's request to approve the proposed arbitration policy and the associated roll-out process to Settlement Class Members, and limit any arbitration policy from being distributed to Settlement Class Members prior to the Court's Order on final approval.[3] Indeed, only at that point would it be clear to Settlement Class Members that any arbitration provision PPL rolls out has nothing to do with the Settlement of the instant action.

We thank the Court for its continued attention to this matter.

Respectfully submitted,

**KATZ BANKS KUMIN LLP**
/s/ Hugh Baran
Hugh Baran (he/him)
Emma Walters (she/her)
Avi Kumin (he/him)
111 Broadway, Suite 1403
New York, NY 10006
(646) 759-4501
Baran@katzbanks.com
Walters@katzbanks.com
Kumin@katzbanks.com

**THE LEGAL AID SOCIETY**
B. Franco Olshansky
Richard Blum
Rebekah Cook-Mack

---

FLSA, otherwise underpaid wages in violation of the FLSA and NYLL, and improperly allocated Wage Parity compensation to Paid Time Off and Minimum Essential Coverage in violation of the NYLL, Wage Parity Act and New York State Sick Leave Law. It is wholly within PPL's power to prevent further such violations—and class-wide liability arising therefrom—moving forward.

[3] Once again, Plaintiffs reiterate that if PPL's motion is denied and Plaintiffs' proposed Rule 23(d) Order is entered, nothing in the Order would prevent PPL from promulgating the arbitration policy to non-members of the Settlement Class.

Michael Diller
Belkys Garcia
Elizabeth Saylor
Rebecca Antar
49 Thomas Street, Fl 5
New York, NY 10013
(332) 227-7291
bfrancoolshansky@legal-aid.org
rblum@legal-aid.org
rcook-mack@legal-aid.org
mdiller@legal-aid.org
brgarcia@legal-aid.org
esaylor@legal-aid.org
rantar@legal-aid.org

*Counsel for Plaintiffs & the Settlement Class*

cc: All counsel (via ECF)