UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

PHILIP CALDERON, FARSHAD PINCHASI, ALLISON FIELDS, and DANA FOLGAR, *on their own behalf and on behalf of all others similarly situated*,

Plaintiffs,

v.

PUBLIC PARTNERSHIPS, LLC,

Defendant.

---------------------------------------------------------------X

**MEMORANDUM & ORDER**

**25-cv-02320 (FB) (LKE)**

**LARA K. ESHKENAZI**, United States Magistrate Judge:

Before the Court is the motion of Defendant Public Partnerships, LLC ("Defendant," or "PPL") for approval of its proposed dispute resolution agreement ("DRA"), which it intends to distribute to personal assistants ("PAs") who receive payment from PPL, including members of the settlement class in this case ("Settlement Class Members"). In response, Plaintiffs Calderon, Pinchasi, Fields, and Folgar (collectively, "Plaintiffs") seek an order under Federal Rule of Civil Procedure 23(d) barring Defendant from distributing the DRA to Settlement Class Members. For the reasons set forth below, the Court declines to rule on the validity of the DRA to the extent it does not apply to Settlement Class Members, and grants Plaintiffs' motion for an order barring Defendant from distributing the DRA to Settlement Class Members during the period between preliminary and final approval of the class settlement in this case.

## I. BACKGROUND

Plaintiffs, on behalf of themselves and other PAs who were paid through PPL as part of the New York State Medicaid Consumer Directed Personal Assistance Program ("CDPAP") between

March 1, 2025, and April 30, 2025, brought this case alleging that PPL had violated "state and federal law by, among other things, failing to pay them accurately and on time." (Mem. L. Supp. Joint Mot. Settlement Approval at 1, ECF 55-1.) After extensive mediation, the parties reached a class settlement and submitted a motion for preliminary approval of class certification, appointment of class counsel, and class settlement on June 23, 2026. (ECF 55.)

At the preliminary approval hearing, held on July 1, 2026, the parties raised the topic of PPL's proposed DRA. (*See* July 1, 2026, Min. Entry & Order, ECF 58.) PPL explained that it wanted to institute a DRA, including a class action waiver, to create a mechanism by which it could address issues raised by PAs without becoming subject to lawsuits related to its role as the statewide fiscal intermediary. (July 1, 2026, Tr. at 20:6-20:11, 22:9-22:17, ECF 59.) Plaintiff opposed the implementation of DRA, to the extent it would impact Settlement Class Members, based on the concern that the DRA may confuse class members and cause them to mistakenly opt out of the settlement agreement in this case. (*Id.* at 21:7-21:14.) Plaintiffs noted that a prior attempt by Defendant to implement a DRA had led to significant class confusion, resulting in Defendant withdrawing the DRA. (*Id.*) Pursuant to this Court's order, the parties met and conferred to determine whether they could resolve the issue, but were unable to do so, leading to the filing of the current motions.

## II. <u>ANALYSIS</u>

PPL seeks to implement the DRA to "promptly address concerns presented by PAs, while simultaneously addressing the risk that PPL will remain in a never-ending loop of class and collective actions related to payroll issues stemming from its role as the statewide fiscal intermediary" for New York State Department of Health ("NYSDOH"). (*See* Letter Mot. for Approval of Forms at 1, ECF 67 ("Def. Mot.").) The DRA would be distributed to the following

groups of current PAs: (1) current downstate PAs who are members of the preliminarily certified class in *Calderon*; (2) current downstate PAs who are not members of the preliminarily certified class in *Calderon* (meaning, PAs who started after May 1, 2026); and (3) current upstate PAs in the putative class in another pending lawsuit, *Flanagan v. Pub. P'ships, LLC*, No. 25-cv-6225 (W.D.N.Y.). (Def. Mot. at 2.)

Plaintiffs oppose Defendant's Motion and request that the Court enter an order under Federal Rule of Civil Procedure 23(d) "barring PPL from distributing the proposed arbitration provision – or any other arbitration provision – to Settlement Class Members before the Court has entered an order on final approval[.]" (Pls. Mem. Opp. at 1, ECF 69 ("Pls. Mot.").) Plaintiffs argue that the "simultaneous distribution of both Court-approved Class Notice and an arbitration provision—both of which allow for opt-out procedures—unnecessarily introduces confusion into the ongoing settlement notice process [.]" (*Id.* (emphasis omitted).)

As an initial matter, this Court does not have jurisdiction over non-parties to this litigation, and accordingly, the Court declines to rule on the appropriateness of rolling out the DRA with respect to any PAs other than Settlement Class Members. With respect to Settlement Class Members, Federal Rule of Civil Procedure 23 allows a court to limit communications in class actions and gives the court a "responsibility to restrict communications that are potentially coercive or misleading." *Zamboni v. Pepe W. 48th St. LLC*, No. 12-cv-3157, 2015 WL 978935, at *2-3 (S.D.N.Y. Mar. 12, 2013). To determine whether there has been coercion or deception, courts consider (1) class members' relative vulnerability; (2) evidence of actual or contextual risk of coercion; (3) evidence of defendant's intention to narrow the class; (4) whether the provision was imposed unilaterally; and (5) evidence of misleading conduct, language, or omissions. *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 255 (S.D.N.Y. 2020). In deciding to restrict

communications with Settlement Class Members, courts need not find the existence of actual or willful misconduct, "so long as the effect is to interfere with class members' rights." *O'Connor v. Uber Techs., Inc.*, No. c-13-3826, 2013 WL 6407583, at *6 (N.D. Cal. Dec. 6, 2013). Courts evaluating arbitration agreements introduced during the pendency of collective or class litigation focus principally on whether the communications are misleading, coercive, confusing, or improperly designed to undermine participation in the litigation. *O'Conner v. Agilant Sols., Inc.*, 444 F. Supp. 3d 593, 601 (S.D.N.Y. 2020).

Here, the Court finds that permitting the roll-out of the DRA during this particular moment of the litigation—the period between preliminary approval of the settlement agreement and final approval during which class members are deciding whether to opt in to the settlement—would be unnecessarily confusing and could potentially undermine participation in the litigation. While the Court does not find the DRA itself to be coercive or misleading, and appreciates the steps Defendant has taken to reduce any confusion (*see* Def. Mot. at 2-4, 6-7; Def. Reply Mot. ("Def. Reply") at 3, 5-6, ECF 70), the Court nevertheless concludes that the risk of confusion for Settlement Class Members is high for several reasons.

First, as Plaintiffs correctly highlight, the timing of the rollout of the DRA would directly overlap with the notifications to Settlement Class Members of this settlement, which could confuse class members about the relationship between the DRA and the settlement. (Pls. Mem. Opp. at 6.) Second, the DRA contains an opt-out process which, despite best efforts at clarity, could still cause Settlement Class Members to inadvertently opt out of the settlement here, a risk that is particularly high due to the number of Settlement Class Members for whom English is not their first language. (*See id*. at 7.) Finally, the Court shares Plaintiffs' concern that the timing of the DRA rollout may

cause Settlement Class Members to believe that accepting the arbitration agreement is a condition of accepting the settlement in this case. (*Id.* at 8.)

While Defendant is correct that courts have allowed businesses to implement arbitration agreements during pending class litigation so long as the rollout procedures are not misleading or coercive and workers receive meaningful notice and an opportunity to decline participation, *see Carusillo v. FanSided, Inc.*, No. 20-cv-4766, 2021 WL 4311167, at *6-7 (S.D.N.Y. Sep. 21, 2021), the facts here are distinguishable. In *Carusillo*, the case Defendant primarily relies on (*see* Def. Mem. at 6), the court found that there were "prominent, clear, and unambiguous class and collective action waivers," and the communications provided clear notice of the employee's right to decline participation in the arbitration agreement. 2021 WL 4311167, at *6. Here, like in *Carusillo*, the DRA prominently discloses the existence of pending litigation, including *Calderon* and *Flanagan*, and contains clear language providing notice that participation in the agreement is voluntary and expressly prohibits retaliation for declining to participate. (Def. Mot. at 2, 7.) The significant distinction between this case and *Carusillo*, however, is the timing. In *Carusillo*, the court permitted the defendant to communicate with putative collective action members about an arbitration agreement during the collective action opt-in period, a relatively early stage of the litigation. 2021 WL 4311167, at *6-7. Had the court not permitted the rollout of the arbitration agreement, the defendant potentially would have had to wait many months or years until the end of the litigation to communicate with collective action members about the arbitration provision. This case, however, is in the final stages of litigation. Indeed, the hearing for final approval of the settlement is scheduled for November 10, 2026 (July 1, 2026, Min. Entry & Order), and Defendant offers no explanation for the urgency of its request to communicate with Settlement Class

Members about the DRA now rather than wait just a few months when the risk of confusion will no longer exist.

While the Court does not doubt Defendant's assertion that the "DRA serves legitimate and substantial operational purposes" (Def. Reply at 2), Defendant does not provide any specific information about how the delay of a few months will have a substantial impact on these concerns. Defendant also offers no case law, and the Court could not find any, involving the approval of communications with Settlement Class Members about opting into dispute resolution agreements during the particularly sensitive period between preliminary and final approval of the class settlement. Considering the unique timing of Defendant's proposed rollout of the DRA, and balancing the significant risk of confusion with Defendant's desire to introduce the DRA sooner rather than later, the Court concludes that the potential for confusion outweighs Defendant's "operational purposes." This is especially true since, as Plaintiffs note, limiting communications with Settlement Class Members about the DRA will not prevent Defendant from rolling out its DRA to all non-class members.

Finally, the Court has considered Defendant's argument that Plaintiffs' concern about class confusion "ends on September 19, 2026, which is the deadline for opt-outs and objections to be filed." (Def. Reply at 4.) Plaintiffs have raised sufficient concerns, however, that even after the opt-out deadline, members will "continue to learn about and understand" their settlement rights and the distribution of the DRA in a parallel process could "undoubtedly" cause confusion and lead PAs to believe that agreeing to the DRA is a term of the settlement, and could potentially lead to Settlement Class Members attempting to submit late opt-outs. (Pls. Sur-Reply at 1.) The Court is persuaded that the risk of confusion does not end on September 20, the opt-out deadline, and

that the prudent course is to limit Defendant's communications with Settlement Class Members about the proposed DRA until after final approval of the class agreement.

As such, the Court denies PPL's motion and grants Plaintiffs' motion for a Rule 23 Order. Nothing in this Order, however, prevents PPL from communicating with non-members of the Settlement Class about its proposed DRA.

## III. CONCLUSION

Based on the foregoing, Defendant's motion is denied and Plaintiffs' motion for an order pursuant to Federal Rule of Civil Procedure 23(d) is granted. Defendant may not communicate with Settlement Class Members about the proposed DRA during the period between preliminary and final approval of the class settlement in this case.

**SO ORDERED.**

Brooklyn, New York
September 4, 2026

Lara K. Eshkenazi
LARA K. ESHKENAZI
United States Magistrate Judge